CASE 41—ACTION FOR AN INJUNCTION—DEC. 20.

# City of Louisville v. Board of Park Commissioners.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

VALIDITY OF ORDINANCE—ELECTIONS—SUBMISSION OF QUESTION AS TO CREATING INDEBTEDNESS—POWER TO COMPEL A RECANVASS OF THE VOTE—ESTOPPEL—MANDATORY INJUNCTION.

Held: 1. An ordinance providing for a submission to the voters of a city of the question whether bonds to a certain amount should be issued by the city for park and sewer purposes related to a single subject, and the submission was not invalidated by reason of the fact that the purpose to which the

proceeds of the bonds were to be applied was stated in submitting the question.

2. Though the election commissioners have canvassed the returns and certified the vote, showing a majority of more than two-thirds in favor of the bond issue, and the bonds have been executed and delivered, one-half to the board of park commissioners and one-half to the city treasurer, the commissioners may be required to recanvass the vote, and count the votes of certain precincts which were omitted from the former count, no bond having passed into the hands of any purchaser.

3. Though the law under which the election was held and the vote was canvassed has been repealed, and a new board of election commissioners has been created, the new board, having the same powers as the old board, may be compelled to recanvass the vote; and, though the members of the board had not been appointed when the chancellor rendered his judgment, yet, as the judgment must be reversed to the extent that it refuses an injunction restraining the city from disposing of the bonds, the members of the board appointed since the judgment was rendered may be made parties on the return of the case, and be required by mandatory injunction to recanvass the vote.

4 The court judicially knows that election commissioners have been appointed and are now in office under the new law.

5. While mandamus would ordinarily be the proper remedy to compel the election commissioners to recanvass the vote, yet, in a suit brought primarily to restrain the sale of the bonds until the result of the election can be determined, plaintiffs may have a mandatory injunction to compel a recanvass of the vote.

H. L. STONE, FOR APPELLANT.

BENNETT H. YOUNG, H. H. HERR, PIRTLE & TRABUE AND CHARLES A. NELSON, FOR APPELLEE.

(No briefs in the record.)

OPINION OF THE COURT BY JUDGE DuRELLE—REVERSING.

By demurrer to the petition the following facts are admitted to be true: The city of Louisville is a city of the first class, with authority to govern itself by ordinances and resolutions for municipal purposes not in conflict with the Constitution or laws of this State or of the United

States.  The board of park commissioners has, by law, the care, management, and custody of all parks and grounds used for park purposes, and has power, whenever in its opinion property shall be needed for park purposes by resolution reciting such need, to order a condemnation of such property.  For the purpose of raising money for the purchase or improvement of lands for park purposes, the general council of the city is authorized by ordinance to submit to the qualified voters the question whether bonds shall be issued, and if two-thirds of those voting assent the bonds are required to be delivered to the board of park commissioners.  An ordinance was passed by the general council providing for the submission to a vote of the people at the November election, 1900, of the question whether $500,000 of 3 per cent. 40-year bonds of the city of Louisville should be issued, $250,000 of the proceeds thereof to be used by the board of park commissioners in acquiring the title by purchase or condemnation for park purposes of Central Park, or duPont square, and the other $250,000 of the proceeds thereof to be expended under the supervision of the board of public works in the construction of such sewers in the city of Louisville as should be provided for by ordinance.  The question was submitted to the voters of the city upon the official ballots in this form:  "Are you in favor of the issuance of $500,000 of bonds by the city of Louisville for the construction of sewers and for the acquisition of tracts of land for park property in the city of Louisville, as provided in the ordinance approved October 17, 1900?"  The county board of election commissioners of Jefferson county canvassed the returns, and certified that 10,252 votes were cast in favor of the issuance of the bonds, and 4,951 votes against their issuance; thus showing a majority of more than two-thirds

of the votes cast on that question in favor of the bond is-
sue.   But the board of election commissioners in the can-
vass of the vote on question of issuing bonds failed and
refused to count the vote in eighteen precincts of the city
of Louisville in which votes were cast for and against the
bond issue, and did not canvass or count the votes for and
against that proposition, although returns were made to
the clerk of the Jefferson county court by the precinct
election officers from each of these precincts of the vote
cast for and against the issuance of bonds, which re-
turns, if they had been canvassed by the county board of
election commissioners, might have changed the result of
the vote on that proposition.   The bonds were prepared,
executed, and delivered, one-half to the board of park
commissioners, and one half to the city treasurer, and none
of them was sold or delivered to any purchaser.   There be-
ing doubt as to the legality of the canvass of the votes for
and against the proposition to issue bonds, and as to
whether that proposition was carried as required by law,
and further doubt as to whether the double proposition
was lawfully submitted in one question upon the ballots,
the general council passed a resolution directing the city
attorney to institute proceedings to have the question of
the validity of the bonds tested and determined by the
courts.   This suit was thereupon brought in equity, set-
ting forth the facts recited above, with others unnecessary
to be here mentioned, and praying—First, that the board
of park commissioners, the board of public works, and the
city treasurer be enjoined from selling or disposing of the
bonds; and, second, that the county board of election com-
missioners be required to reconvene and recanvass the
vote cast for and against the proposition to issue bonds,
to include in such recanvass the return from the eighteen

precincts, and to certify the result of such recanvass, including the eighteen precincts referred to, and that the county court clerk be required to furnish the board of election commissioners the returns from such eighteen precincts. A general demurrer by all the defendants and a special demurrer to the jurisdiction by the board of election commissioners were sustained to the petition, and, the city of Louisville standing by its pleading, the action was dismissed.

The question of statutory authority to submit the question of incurring indebtedness or issuing bonds for sewer purposes to the voters is not raised by the pleadings nor argued by counsel, and is not decided.

The first objection argued we do not think can be sustained. The subject of the ordinance was single. It was the issuance of city bonds to the amount of $500,000. The mere statement of the purposes for which the proceeds of the bonds were to be expended does not vitiate the submission of the single question whether the liability is to be incurred. As said by the chancellor, it "is a protection to the voter, rather than a danger." The question submitted was whether the city should be authorized or permitted to become indebted to an amount exceeding the income and revenue provided for that year, viz. to the extent of $500,000, to be paid out of the income and revenue of other years. It can hardly be doubted that if the question submitted had been whether the city should incur this liability, without any statement of the purpose, it would have been a proper submission, so far as the form of the question is concerned.

The other objection presents a different question. Undoubtedly it was the duty of the county election commissioners to canvass all the returns. It was their duty to

canvass the returns from the eighteen precincts in which it is admitted votes were cast for and against this proposition, and the returns from which were not canvassed at all. It may be possible that the returns in those precincts were in such shape that they could not be counted, but it was none the less the duty of the board to canvass them, and, if found countable, to count and certify them. The averment that the commissioners of election refused to canvass returns duly made by the election officers in about one-tenth of the precincts of the city is an averment of facts which constituted fraud. If this body of ministerial officers—this mere counting machine, as it has been called —can refuse to count, or even consider, the election returns from a tenth of the city precincts, they can exercise their pleasure in like manner as to any proportion of the returns. If they can exclude one-tenth of the voters from participation in such an election, they can, with equal propriety, exclude nine-tenths. If this is so, the constitutional bulwark against the imposition of liability upon the city and its taxpayers is waste paper. Such disfranchisement of voters upon a matter which involves property rights—such a wanton invasion of the sacred right of suffrage—can not be tolerated for a moment, if the courts have the power to intervene. It makes no difference how beneficial was the object intended to be attained by the submission to popular vote, nor how much the members of the court may desire the attainment of that object. The right of the citizen to vote upon the question, and to have his vote counted and recorded, is too high to be overridden, even for the attainment of that object.

The question presented is whether there is a remedy. The entire argument is addressed to that proposition. Over six months elapsed from the date of the election be-

fore the bringing of the suit.   There is no specific provision
for a contest of the result of the submission of such a
question to popular vote, as there is in the case of local
option elections.   No contest has been instituted.   It is
somewhat difficult to determine upon whom notice of con-
test could have been served.   Upon the averment of facts
which constitute at least constructive fraud, and which
are admitted by demurrer, can the courts interfere to
compel this ministerial board of election commissioners to
perform its duty,—to canvass the returns, and all the re-
turns, and certify the result of the election in accordance
therewith?   We think this can be done.   It was done in
Clark v. McKenzie, 7 Bush, 526.   In that case, as in this,
the board had already acted in the matter; but this court
held, through Judge Lindsay:   "Until they have performed
the exact duty imposed upon them by law, they must be
considered as in default; and in a case like this it would
be a legal anomaly to allow the examining board to rely
upon the fact that they had issued the certificate of elec-
tion to a party who had not received the largest number
of votes, contrary to an express provision of the law, as a
sufficient reason why they should not be compelled to per-
form an imperative duty." In Riggs v. Stevents, 92 Ky., 393 (13
R. 631) 17 S. W., 1016, this court, through Judge Holt, upon
averments which, without specifically charging fraud or
mistake, showed facts which constituted fraud or mistake,
enjoined a tax which was claimed to have been voted for
the establishment of a school.   There is no estoppel in this
case.   Not a bond has passed into the hands of a purchas-
er.   The board of park commissioners may be a body cor-
porate, with power to sue and be sued, etc., but it is none
the less an arm of the city of Louisville; and the fact
that the city caused the bonds to be executed, and, in

a sense, issued to two of the agencies by law provided for its' exercise of municipal governmental powers, can not constitute an estoppel against it.. It might as well be said that one who sends a clerk to the bank with a promissory note is estopped to call him back.

It is objected that by section 2 of the act of October 24, 1900, which went into. effect after the election of November of that year, the Goebel election law was repealed, and a new county board of election commissioners created, consisting of the sheriff of the county and two commissioners appointed by the State board of election commissioners; that by the repeal of the law under which the election was held the board of election commissioners appointed under it became functus officio, had no more power to act in any manner, and in.fact no legal existence; and as the new board at the date of the judgment had not been appointed there was no one in existence upon whom a mandamus or a mandatory injunction could operate. In Clark v. McKenzie, supra, it was held that the mandamus would lie against the successors in office of the board which should have performed the duty. That doctrine could not have been applied by the chancellor at the time he rendered his judgment. But the court judicially knows that, under the new act, election commissioners have been appointed and are now in' office, with power to perform the same duties imposed on the old board. It is unnecessary, therefore, to consider what the chancellor might have done. On the return of the case the petition can be amended, and the members of the present board be made parties. As the old boards has not performed its duty, its successor may be required to perform it. Mullins v. McNeil, 109 Ky., 593 (22 R., 1112) (59 S. W., 849).

Mandamus would undoubtedly be the proper remedy if the complete canvass of the returns were the only relief sought. Primarily however, this suit is to restrain the sale of the bonds until the result of the election can be determined. This being so, we see no reason why, having jurisdiction for the one purpose, we may not, by the correlative writ of mandatory injunction, grant the relief ordinarily effected by the writ of mandamus.

The judgment is reversed, and cause remanded, with directions to overrule the demurrers to the petition and for further proceedings consistent herewith.

Judge Guffy's specially concurs:

I concur in the reversal of the judgment herein, but I do not concur in so much of the opinion as holds valid an ordinance submitting to a vote as one proposition the two objects named, viz. park and sewer bonds. It is provided in the charter of Louisville, in section 2777, Kentucky Statutes, that "no ordinance shall embrace more than one subject, and that shall be expressed in its title." If sewers and parks are not different subjects, it is hard to conceive of what would be different subjects or objects. The provision quoted is similar to the provision of the Constitution, and both were adopted for a wise and proper purpose; and, as I think, the main purpose was to require every act to stand or fall upon its own merits, and, if there ever can be a case in which the provision in question ought to be enforced, it is in regard to such ordinances and propositions as the ones under consideration.

I think the ordinance is utterly void, and the vote cast upon the subjects a nullity.