## Allen v. Cromwell, Secretary of State.

## Cromwell, Secretary of State v. Meredith.

(Decided June 20, 1924.)

## Appeals from Franklin Circuit Court.

1. States—Submission of Bond Issue to People Under Enactment Containing Several Subjects would be Violative of Constitution Requiring Elections to be Fair and Equal.—An enactment relating to submission of question of bond issue to people, if it contain more than one subject in its title and body, if submitted to voters, would be violative of Constitution, section 6, requiring that all elections shall be free and equal.

2. Statutes—Act for Issuance of Bonds Held to Contain Single Subject though Money to be Devoted to Several Distinct Purposes.— Issuance of bonds in amount proposed by an act providing for submission of question to people deals with a single subject, so, that single question need only be submitted to voter, even though money is to be devoted to several distinct and unrelated purposes, under Constitution, section 51.

3. States—Power of Legislature as to Disposition of Funds Plenary. —Legislature has plenary power, under Constitution, to deal comprehensively and finally with disposition for legitimate purposes of all available funds.

4. Statutes—Act Not Rendered Invalid Because Title is More Elaborate than Necessary.—An act is not rendered invalid under Constitution, section 51, because its title is more elaborate than necessary, if it embraces only one subject.

5.  Statutes—Title and Body of $75,000,000.00 Bond Bill Held to Contain Single Subject.—The title and body of House Bill No. 37, known as "the Seventy-five Million Dollar Bond Bill," held to contain but one subject, and not violative of Constitution, section 51.

6.  Statutes—$75,000,000.00 Bond Bill Held Not Invalid as Attempt to Amend Statutes by Reference Merely.—House Bill No. 37, known as "the Seventy-five Million Dollar Bond Bill," held not to contravene Constitution, section 51, as attempting to amend other statutes by reference merely.

7.  Statutes—When Act Does Not Purport to be Amendment, it is Not Necessary to Republish Any Part of Old Law.—When an act does not purport to be an amendment to an existing law, but a new act, it is not necessary to set out or republish any part of an old law that may be changed or repealed by new law under Constitution, section 51.

8.  States—$75,000,000.00 Bond Bill Held Not Invalid as Failing to Levy Taxes to Pay Bonds.—House Bill No. 37, known as "the Seventy-Five Million Dollar Bond Bill," is not invalid as not levying taxes to pay bonds and interest in 30 years, as Constitution, section 50, does not require levy, but merely that provision be made to levy.

9.  Constitutional Law—$75,000,000.00 Bond Bill Held Not to Contain Unwarranted Delegations of Powers.—House Bill No. 37, known as "the Seventy-Five Million Dollar Bond Bill," is not invalid as containing unwarranted delegations of powers to various boards and departments in that definition of purposes for which money to be spent is so general and indefinite that a board must of necessity exercise legislative rather than ministerial functions in apportioning funds.

ALEX. P. HUMPHREY, ALEX. G. BARRET and CHESTER GOURLEY for appellants.

FRANK E. DAUGHERTY, Attorney General, HUBERT MEREDITH, L. L. WALKER, HENRY S. McELROY, S. C. EAVES. I. G. MASON, S. Y. TRIMBLE, S. WALTON FORGY and C. J. WADDILL for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing in each case.

These actions were instituted (the former by a friend and the latter by a foe) to test the validity of House Bill No. 37, adopted at the recent session of the general assembly, and commonly known as "The Seventy-Five Million Dollar Bond Bill." The lower court, being of the opinion that the act is violative of section 51 of the state Constitution, dismissed the petition in the Allen case seeking to enforce the provision for its

submission at the state election, and in the Meredith case enjoined its submission.

Section 51 reads:

"No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

The lower court assigned three reasons for holding the act violative of this section, and counsel for appellees list separately nine other alleged grounds of invalidity, but all of the court's reasons and many of appellee's are found upon analysis to be but variant statements of the single contention that the act, in both its title and body, embraces more than a single subject.

If this is true the act not only is plainly violative of section 51 *supra,* but we freely concede its submission to the voters in the manner therein provided would be violative of the constitutional guaranty of section 6, that all elections shall be fair and equal.

So the principal question presented, and the first to be decided, is whether the subject of the act is single or multiple, and this depends wholly upon a determination of what is its subject.

It submits to the voters for their decision the single proposition of whether or not $75,000,000.00 of bonds shall be issued and sold, and this the appellants contend is the single subject of the act.

But complying with the provisions of section 178 of the Constitution, the body of the act, after providing in detail for the issuance, sale, and final redemption of the bonds, specifies the several purposes for which the $75,-000,000.00 is to be used, and for appellees it is contended that each such purpose is a separate subject.

This precise question has been expressly decided three times by this court (City of Louisville v. Board of Park Commissioners, 112 Ky. 409; 65 S. W. 860; Swann v. City of Murray, 146 Ky. 148, 142 S. W. 244; Ky. L. & P. Co. v. Williams, 124 S. W. 840), and each time it was held that the issuance of bonds in the amount proposed was the single subject of such an enactment and the only question that need be submitted to the voters, even

though the money was to be devoted to several distinct and unrelated purposes.

Moreover in at least two other more recent cases the question has been treated as settled and the issue of bonds declared legal where only the amount thereof was submitted to the voters, and the money derived from the sale of same was to be used for several separate and distinct purposes. Wilkerson v. City of Lexington, 188 Ky. 381, 222 S. W. 74; Snow v. City of Providence, 202 Ky. 627, 260 S. W. 389.

The last of these decisions was rendered by the whole court on March 28th of this year, and since the adoption of this act; and while one member of the court dissented when in the Louisville case the question was first considered, upon the ground that the subject was multiple because the funds were to be used for sewers and parks and these were different subjects, the majority decision was expressly adhered to and reaffirmed in the Murray case by the whole court and without dissent.

There is no case from this court holding otherwise, or even criticising any of these cases, so that in so far as this court is able to settle any question, it has settled this one, and the legislature was fully warranted in believing it had the power to submit the proposed bond issue for various enumerated purposes in a single act and by a single ballot; and in devoting much of its recent session to the preparation and passage of this bill for that purpose in response to a state-wide demand that it be done.

But it is urged that other courts have decided the question differently—and so they have (see Stern v. Fargo, 26 L. R. A. (N. S.) 665, and cases annotated in the note thereto)—and it is insisted that those opinions are supported by the better reasoning. We might even concede that too, and it yet would clearly be our duty in the present circumstances to follow rather than overrule such an unbroken line of cases construing our own Constitution, not only because of considerations already suggested but also because there is no telling how many like issues of bonds may have been marketed by other municipalities upon the faith of these decisions, and without specific approval by this court.

But we need make no such concession, since there is much to be said in support of our position, despite its isolation. The legislature has plenary power under our Constitution, just as have the various municipalities

under their charters, to deal comprehensively and finally with the disposition for legitimate purposes of all available funds. The single power the legislature lacked to fully carry out the purposes of this bill, and for which it must go to the people, is the power to incur an indebtedness *by the issuance of bonds* above the amount prescribed in section 49 of the Constitution.

Then again, the thing to be submitted to the people in such circumstances is, according to section 50, the *act* proposing the issuance of bonds in the desired amount, which act, that section also provides, shall not "take effect" until approved by the voters at a general election; and that:

> "No act of the general assembly shall authorize any debt to be contracted on behalf of the Commonwealth except for the purposes mentioned in section 49," etc.

The only purpose mentioned in section 49 is the issuance of bonds to take care of debt or *debts* the aggregate of which exceeds $500,000.00. In our judgment these provisions of our organic law are sufficient to justify this court's conclusion that the single question to be submitted to the people upon such a referendum is whether they favor the *act* authorizing the issuance of bonds in a given amount; that the subject of such an act is the issuance of bonds, and that the subject is single, without reference to the purpose or purposes for which the funds are to be used.

But even if this were not true, we feel sure, as already stated, that we should not now depart from the position so long and consistently adhered to, especially as three of the five cases on the subject were considered by the whole court, and although the court was divided upon its first consideration of the subject, it has been without division in its uniform subsequent approvals of the original majority opinion.

We therefore conclude that the subject of the act is single, viz., the issuance of bonds, even though the proceeds thereof are to be devoted to various unrelated purposes, and that the only thing required to be submitted to the voters for their approval is the act proposing and providing for the issuance of the bonds.

It results from these conclusions, (1) That the body of the act embraces but a single subject, and therefore is not violative of the first part of section 51 *supra,* and

(2) that but a single subject is submitted to the voters for their decision, and that therefore the submission in a single ballot is not violative of the guaranty of section 6 that all elections shall be fair.

The next question for decision is whether the title of the act is plural and violative of section 51 because of references therein to the maintenance of roads. It reads, with references italicised, as follows:

> "An Act to provide for the execution and sale of seventy-five million dollars ($75,000,000.00) of bonds of the Commonwealth, fixing the time when they shall be sold and the use of the proceeds thereof, providing for the application of public funds to the payment of the principal and interest upon said bonds *and to the maintenance of roads*, to the end that said bonds may be extinguished within thirty years *and said roads maintained in the meanwhile*, and providing for the submission of this Act to the voters at the general election to be held on November 4, 1924."

Since the subject of the act is the issuance of bonds, and all of the provisions of the act are germane to that subject, it is clear that the legislature might have selected as its title the first clause of the title it did select, which reads, "An Act to provide for the execution and sale of seventy-five million dollars ($75,000,000.00) of bonds of the Commonwealth." But this court has often held that an act is not rendered invalid because the title is more elaborate than necessary, if it embraces only one subject (Bowman v. Hamlett, 159 Ky. 184, 166 S. W. 1008), and that:

> "The legislature in the enactment of a measure may make for it such a title as it chooses, and as said in Cooley's Constitutional Limitations, 212, the title of an Act is 'The conclusive index of the legislative intent as to what shall have operation' and the Constitution has so ordained it. The title may be general, and in such a state of case, any provision of the statute having a natural connection with the subject expressed in the title, and not foreign to it, satisfies the requirements of the Constitution." District Board, etc., of Fayette Co. v. Bradley, Mayor, 188 Ky. 426, 222 S. W. 518.

Exercising this privilege, the legislature has seen fit to add several explanatory clauses to the general title

selected, for the purpose of indicating in the title that
in the body of the act provisions are made:

    (1.) Fixing the time when the bonds shall be
sold and how the proceeds shall be used.

    (2) For the application of public funds to the
payment of interest and retirement of the bonds in
30 years, and to the maintenance of roads.

    (3) For the submission of the act to the vot-
ers at the general election on November 4, 1924.

It is obvious, as is conceded, that all of these ex-
planatory clauses are incidental and germane to the
principal title of the act, except the provision that pub-
lic funds are to be applied to the maintenance of roads;
and that this is likewise germane to the issuance of the
$75,000,000.00 of bonds—which, as we have seen, is both
the general title and the single subject of the act—is
made entirely clear by the body of the act, wherein the
only provision with reference to roads is that any excess
of public funds set apart to pay the bonds and interest
shall be devoted to road maintenance.

By reason of the provisions of section 50 of the Con-
stitution, it was imperative that the legislature make
provision in the act for the levy and collection of an an-
nual tax sufficient to pay the interest and discharge the
bonds in 30 years. Hence it was merely incidental to
and therefore not a divergence from the subject of the
act to provide therein how the excess, if any, of the funds
so provided should be expended. McGlone v. Womack,
129 Ky. 274, 111 S. W. 688.

For the very same reasons it follows that the title
was not duplicitous because of its reference to the fact
that the act provides, not only as was necessary for
funds to discharge the bonds, but also that any excess
thereof shall be used for the maintenance of roads.

Nor did the reference to road maintenance in the
title so restrict the title as to require that the body of
the act should provide only for road maintenance out
of funds derived from such bonds, as under the doc-
trine of South v. Fish, 181 Ky. 349, 205 S. W. 329, and
like cases, probably would have been the case had the
title indicated that any portion of the proceeds of the
bonds was to be used for road purposes, and as counsel
for appellees and the lower court erroneously assumed
was true.

.That they were in error in so assuming is quite clear, since, as the above analysis of the title emphasizes, it states only that public revenues are to be devoted to the payment of the principal and interest of these bonds and to the maintenance of roads, and not that the proceeds of the bonds are to be so used.

We therefore conclude the title does not in any way offend section 51 of the Constitution.

It also is contended that the act contravenes the latter portion of section 51, *supra,* in that it attempts to amend other statutes by reference merely. This is because of the provisions the act makes for the payment of the bonds and interest as is required by section 50, which are as follows:

> "There are hereby appropriated for the payment of the principal and interest of said bonds, to be set aside as received and held inviolably for that purpose, all funds received during the thirty years aforesaid from the following sources:
>
> "(a) From the license taxes imposed by chapter 90 of the acts of the General Assembly of 1920 and by all acts amendatory or in lieu thereof by which the revenues to be derived from such license is not decreased.
>
> "(b) From the excise tax of 3 cents per each gallon of gasoline in Kentucky.
>
> "(c) The aggregate amount of the direct tax yielded by the three and forty-five hundredths thirtieths direct *ad valorem* tax of the revenue act of 1924 for the construction, reconstruction, maintenance and repair of roads and highways, and for the payment of the interest on and for the creation of a sinking fund for the liquidation of state bonds issued for roads and other purposes."

The trouble with this contention is that it assumes the act is amendatory in its purpose, as it happens to be in effect, for we frequently have held that:

> "When the act does not purport to be an amendment to an existing law but a new act, it is not necessary to set out or republish any part of an old law that may be changed or repealed by the new law." Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017; Henderson Traction Co. v. City of Henderson, 178 Ky. 124, 198

S. W. 730; Lakes v. Goodloe, 195 Ky. 240, 242 S. W. 632; Lyman v. Ramey, 195 Ky. 223, 242 S. W. 21.

As this act is a new and independent act and does not purport to amend any other law, it follows that this contention cannot be sustained, and that neither the title nor the body of the act is violative of section 51 in any way.

Another alleged ground of invalidity is that the act does not levy taxes to pay the bonds and interest in 30 years, as required by section 50 of the Constitution.

This section however does not provide, as this contention assumes, that an act authorizing the issuance of bonds shall itself make the levy, but rather only that "provision be made therein to levy and collect an annual tax sufficient to pay the interest stipulated and to discharge the debt within 30 years."

A like provision in section 159 of the Constitution with reference to bond issues by municipalities has been construed in several cases to mean only that the ordinance providing for the issuance of bonds shall make provision for the necessary levies rather than actually to make them. Lewis v. City of Winchester, 140 Ky. 244, 130 S. W. 1094; City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040; Harris v. City of Morganfield, 201 Ky. 588, 257 S. W. 1032. Such also is the evident purpose and meaning of this provision, and it is so construed. As the act makes such provision, and in the manner approved in the above cases, this contention is overruled.

The only other complaint meriting notice is, that the act contains many unwarranted delegations of powers to various boards and departments.

Taking as illustrative the instance used for that purpose by counsel for appellees, the act provides that the State Board of Education shall receive of the proceeds of the sale of the bonds:

"The following sums for the purposes, and in the installments stated, respectively, . . . :

"(c) One million dollars ($1,000,000.00) in installments of five hundred thousand dollars ($500,-000.00) each, to be paid in the last six months of each of the years 1925 and 1926, and to be used in part for the acquisition of new property and equipment for, and for the improvement by original construction, reconstruction and repair of, the proper-

ties of the Kentucky Normal and Industrial Institute for Colored Persons at Frankfort, and in part for the establishment and equipment of a new normal school for colored people to be located in the western part of the State.''

The objection is, that the legislature's definition of the purposes for which the money is to be spent is so general and indefinite that the board must of necessity exercise legislative rather than ministerial functions in determining, for instance, how the funds shall be apportioned between repairs on the existent Colored Normal School at Frankfort and in providing another such school in the western part of the state.

This same contention was but recently, and after a most careful consideration by the whole court, overruled in Craig v. O'Rear with reference to like provisions of the Normal School Act (chapter 10) of 1922, and we need not do more now than to refer to our opinion in that case, reported in 199 Ky. 553, 251 S. W. 828, and which completely refutes the contention that the act delegates legislative powers in the instance used as an illustration, *supra*, or at all.

Wherefore the judgment in each case is reversed, with directions to dismiss the Meredith petition, and to order the submission of the act to the voters at the November, 1924, election, as prayed in the Allen petition, and as directed by section 9 of the act.

The whole court sitting.