[No. 3356.   Nov. 28, 1928.   Rehearing Denied Dec. 29, 1928.]

STATE ex rel. TAYLOR v. MIRABAL, State Comptroller.

[273 Pac. 928.]

554

George C. Taylor, of Albuquerque, for appellant.

Robert C. Dow, Atty. Gen., and Frank H. Patton, Asst. Atty. Gen., for appellee.

OPINION OF THE COURT

BICKLEY, J. This is a mandamus proceeding brought by the state of New Mexico, on the relation of George C. Taylor, against the comptroller of the state of New Mexico. The purpose of the proceeding was to compel the comptroller to issue to appellant an automobile license without complying with the provisions of chapter 82 of Session Laws of New Mexico 1925, requiring production of a property tax receipt as a condition precedent to the issuing of a license. The tax receipt was not produced, and the license was refused. The return affirms the validity of said statute. There is no dispute as to the facts. The sole question raised by the pleadings is whether or not, under said chapter 82 of the Laws of 1925, payment of property tax in accordance with said act is a condition precedent to the issuance of a license to operate the same on the public highways of this state.

Appellant bases his claim of the invalidity of the statute upon constitutional grounds which will appear in the course of the opinion.

■ The first ground of objection to the act is that the title thereof embraces more than one subject; particular attention being drawn to the fact that one clause refers to fixing registration fees and that another clause provides for the payment of the property tax thereon.

From certain statements in the petition, we assume that the motor vehicle owned by appellant and for which a license was sought is one operated with gasoline.

The material portion of section 16 of article 4 of the New ¡Mexico Constitution,, which is controlling, is as follows:

"The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed except general appropriation bills and bills for the codification or revision of the laws."

The title of the act assailed is as follows:

"An Act Relating to Motor Vehicle and Trailers; Fixing the Rates for Registration Fees Therefor; Providing for and Requiring Payment of the Property Tax Thereon Before the Same May be Operated Upon Public Highways; Amending Sections 2 and 3 of Chapter 96, Laws of 1923."

The title of chapter 96, Laws of 1923, which is amended, is as follows: "An Act Relating to Motor Vehicles and Trailers."

While it is sometimes said that the word "subject" and the word "object," as used in similar constitutional provisions, are synonymous, we have leaned to the position that the word "subject" is broader than the word "object."

In Lewis' Sutherland, Statutory Construction (2d Ed.) § 116, it is said:

"The subject of a statute is the matter of public or private concern in respect to which its provisions are enacted."

■■ The Supreme Court of Minnesota, in Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 28 Am. St. Rep. 382, discussed the meaning of the word "subject" as used in such constitutional provisions in such an able manner that it is often quoted, as follows:

"Again, while this provision is mandatory, yet it is to be given a liberal, and not a strict, construction. It is not intended nor

should it be so construed as to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, or by multiplying their number, or by preventing the legislature from embracing in one act all matters properly connected with one general subject. The term 'subject,' as used in the constitution, is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no ·fair· intendment can be considered as having any legitimate connection with or relation to each other. All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general, idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject. The large number of related or cognate matters often treated of under some comprehensive title, such as 'Criminal Code,' 'Penal Code,' 'Code of Civil Procedure,' 'Private Corporations', 'Railroad Corporations,' and the like, are familiar illustrations of what may be legitimately included in one act. Any construction of this provision of the constitution that would interfere with the very commendable policy of incorporating the entire body of statutory law upon one general subject in a single act, instead of dividing it into a number of separate acts, would not only be contrary to its spirit, but also seriously embarassing to honest legislation. All that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considerëd germane to one general subject. The subject may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject, and not several. The connection or relationship of several matters, such as will render them germane to one subject and to each other, can be of various kinds, as, for example, of means to ends, of different subdivisions of the same subject, or that all are designed for the same purpose, or that both are designated by the same term. Neither is it necessary that the connection or relationship should be logical; it is enough that the matters are connected with and related to a single subject in popular signification. The generality of the title of an act is no objection, provided only it is sufficient to give notice of the general subject of the proposed legislation and of the interests likely to be affected. The title was never intended to be an index of the law."

Having regard for the general principles concerning the constitutional requirement laid down in State v. Ingalls, 18 N. M. 211, 135 P. 1177, and State v. Miller, 33 N. M. 200, 263 P. 510, we are of the opinion that the subject of the act in question is "Motor Vehicles and Trailers," or it might be stated that the subject is "Motor Vehicles and Trailers Operated on the Highways of This State." And we are of the opinion that none of the provisions of the act are so disconnected or repugnant to this subject or to each other that it can be said that by no fair intendment

can they be considered as germane to this general subject. The fact that the act provides for the manner of the imposition of a property tax on such motor vehicles and trailers as are operated on the public highways, does not create a new, different, and separate subject in the act. The subject being a particular class of things, to wit, motor vehicles and trailers operated on the highways of this state, there is no apparent reason why the Legislature may not, in the exercise of its sovereign power, exercise its power of taxation of such things. As was said in Lewis' Sutherland, Statutory Construction, § 117:

"There is no constitutional restriction as to the scope or magnitude of the single subject of a legislative act. One to establish the government of the state embraces but a single subject or object, yet it includes all its institutions, all its statutes. The unity of such an act, covering the multiform concerns of a commonwealth, is the congruity of all the details as parts of one 'stupendous whole,' of one government. That is the grand subject of such a statute or system of laws; it is equally the object of all its varied titles of chapters and sections.

"There is similar unity in acts creating municipal corporations. Such a statute creates the corporate entity, invests it with and regulates the exercise of the necessary legislative, taxing, judicial and police powers. It embraces but one subject."

It is also objected that the act is repugnant to the Constitution because:

"(b)  Special legislation relative to assessment and collection of automobile tax.

"(c)  Because it provides for collection of a tax which is not uniform upon property of the same class.

"(d)  Because the tax sought to be imposed is by the very terms of the Act necessarily based upon a void assessment.

"(e)  Because impossible for administrative officials to comply with either the letter or spirit of the statute, in that various sections of the Act are repugnant to each other and other legislation.

"(f)  Because of improper discrimination among gasoline, electric and steam-propelled vehicles."

The act provides a new method for the assessment of a certain class of motor vehicles and trailers, to wit, such motor vehicles and trailers as are subject to the payment of registration fees under the laws of this state. In other words, apparently only the owners of *such* motor vehicles are required to make a return thereof to the

county assessor in the manner in this act provided. If motor vehicles are not operated on the public highways, presumably they would be taxed as other personal property. The title, properly construed, provides for the tax and also for the payment thereof. It is as though the clause read:

"Providing for * * * property tax thereon before the same may be operated upon public highways."

This provision doubtless amends other provisions of the revenue laws by implication, but it does not, as suggested by appellant, offend against section 18, art. 4, of our Constitution, which is as follows:

"No law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full."

■ The act is a general and not a special law, because the act applies to, and affects alike, all persons and things of the same class. See State v. Ingalls, supra; also Rode v. Siebe, 119 Cal. 518, 51 P. 869, 39 L. R. A. 342.

■■ Appellant's point (c) is that the act provides for a collection of a tax which is not uniform upon property of the same class. He undertakes to support this contention by showing that, under the act, the owner of a motor vehicle desiring to operate it upon the public highways, is required to make a return thereof to the county assessor in advance of the time when other personal property is returned for taxation; that the total tax fixed thereon becomes delinquent at a time prior to the taxes on other personal property; that the general taxpayer pays half of his taxes for the year on the 1st of December, and the last half on the 1st of June following, and thereby having the use of his money for a considerable period of time longer than the automobile taxpayer; that the tax on motor vehicles is not levied in proportion to the value thereof, and is not equal and uniform upon subjects of taxation of the same class, in that, by reason of being required to pay in advance, he loses the earning power of the tax paid for a period of time, and because one motor vehicle of the same make and model, on account of large mileage traveled and accidents to, and

abuses thereof, may be vastly more depreciated' in value than a similar motor vehicle operated but little, and kept in good condition and repair. Similar contentions have been made in the courts of other states and answered in a satisfactory manner. In Northwest Auto Co. v. Hurlburt,, 104 Or. 398, 207 P. 161, an Oregon statute authorizing the summary collection of taxes upon unsecured personal property before equalization and upon certificate of the assessor was held constitutional and valid. The court said:

"This is not an uncommon statute, and we are cited to no case in which it has been held unconstitutional. On the contrary, such a statute has been held constitutional by the Supreme Court of our sister state of California in the case of Rode v. Siebe, 119 Cal. 518, 51 P. 869, 39 L. R. A. 342."

The California Court, in the case cited, said:

"That there is such intrinsic difference between secured and unsecured taxes seems to me self-evident. The object of the constitution is to make the burdens of taxation equal in proportion to the value of all taxable property. To accomplish this object, it is not only necessary that assessments should be duly made and equalized, and the rate levied uniformly, but measures must be taken to secure the collection from all alike. The law imposes upon real estate a lien dating from the first Monday in March of every year for all taxes levied upon the owner for the ensuing fiscal year. It makes such taxes perfectly secure by a lien upon immovable property, and the burden of this lien is in many instances an inconvenience and disadvantage to the owner. If the owner of personal property has no real property to secure the payment of his taxes, must the state leave him for more than six months at liberty to remove himself and his property without its jurisdiction, and risk the loss of the tax altogether, to the prejudice of those whose taxes are secured? Either it must do so or it may collect the tax at once, or take the property into its possession and thus secure the only lien to which personal property may be subjected. These considerations make it clear that there is a difference between secured and unsecured taxes which justifies the classification which the legislature has made, and leaves the law entirely free from objection on the ground that it is not general and uniform."

It may be observed that the history of the enactment under consideration indicates that the occasion for its passage was that, by reason of the fact that on account of the facility with which motor vehicles could be removed from the county in which they are ordinarily taxed and their rapid depreciation, so that in many instances, by the time the taxes were due, they could not be collected by the

methods of distraint and sale, the frequent exchange of such motor vehicles, and other circumstances, resulted in the fact that, as to this particular species of personal property, there was only about a 35 per cent. collection.

The court also said that the fact that a law may work hardship in extreme cases cannot be considered in determining its validity. In the Oregon case cited supra, the court said:

"The fact that the plaintiff was deprived of an opportunity to go before the board of equalization can have no importance here, in the sense of his being deprived of a hearing before some judicial or quasi judicial body, for the reason that 'due process of law' in tax matters does not require regular or indeed any judicial procedure. Judson on Taxation, § 340. In fact, counsel for plaintiff hardly put their argument upon that ground, but rather upon the theory that the statute is discriminatory in that it compels plaintiff to pay its taxes several months earlier than the general run of taxpayers are required to pay theirs. The argument is unsound, in this, that the statute does not discriminate between plaintiff and other property owners similarly circumstanced. The authority given the assessor to cause the summary collection of taxes upon personal property liable to be removed from the county is reasonable, if the county is to have any assurance that its taxes are to be collected. The fair presumption is that the assessor will do his duty and pursue the same course with respect to all property similarly situated. If his action is arbitrary and unwarranted by the facts, the plaintiff perhaps has his remedy by injunction."

In Dohs v. Holm, 152 Minn. 529, 189 N. W. 418, the Minnesota Supreme Court said:

"This court may declare a legislative enactment unconstitutional on the ground that the requirement of uniformity in taxation has been ignored, but should be slow to do so merely because a greater degree of uniformity was practicable or might seem to be desirable."

In the case last cited, it was also urged that the use of certain retail price lists for the purpose of fixing valuation on motor vehicles worked glaring inequalities for the reasons stated in the case at bar, but the court said:

"The fourth ground of attack is that section 3 [Laws 1921, c. 461] violates the constitutional requirement of uniformity because it arbitrarily fixes the value of an automobile for the first three years at its listed retail price at the factory. We know that an automobile is worth much less than its original price after it has been driven for even a comparatively short time. Appellant, therefore, contends that the owner should not be required to pay the

same tax on it for three successive years, but a lesser tax from year to year as its value diminishes. It is urged that, if there is to be even a semblance of regard for uniformity, the purchaser of a used car should not be taxed as much as the purchaser of a new one of the same kind. When section 3 was framed the Legislature recognized the fact that the value of automobiles diminishes progressively. It directed that after the .third year 25 per cent. of the list price should be deducted, and, after the fifth year, 50 per cent. It did not see fit to provide for an annual assessment on the basis of actual money value. The result is that there are glaring inequalities in the taxes paid by automobile owners. Responsibility for the fairness and justice of a tax measure rests upon the Legislature. The courts may not declare the measure invalid merely because it does not come up to their conception of a proper method of taxation. No system of taxation which is free from inequalities has yet been devised. The attack upon this act is essentially an attack upon the classification as indefensible. The Legislature has created three classes. The age of a vehicle determines the class to which it belongs. We recur then to the question already discussed. Upon what basis may property be legitimately classified for the purpose of taxing it? What has . been said in section 3 of this opinion is applicable to this phase of the case. Avoiding repetition, we hold that the classification is not so arbitrary or unreasonable that it may not be sustained without disregarding the constitutional requirement of uniformity."

And in Northwest Auto Co. v. Hurlburt, supra, the court remarked:

"There never was, and perhaps never will be, any system of taxation devised that will work even an exact justice in every instance. The best result that the law maker may hope to attain is such an approximation to uniformity as will work out justice in the great majority of cases."

We think what has been said is also an answer to appellant's point (d).

Under his point (e), appellant claims that it is impossible under this act for administrative officials to comply with either the letter or spirit of the statute, in that its various sections are repugnant to each other and other legislation. This is so, he says, because, when he applies for his license to operate his motor vehicle for the year 1929, he must first pay a property tax for 1929, and that the tax rate as established for 1928 is applied in determining the tax for 1929. This, appellant says, is illegal because, even if the Legislature had the power to do so, there is nothing in chapter 82 providing that the automobile tax for 1929 should be based on the tax rate or levy for 1928. We think appellant is mistaken. Section 6 of the act provides that the taxes upon such motor vehicles

"shall be extended upon such assessment rolls at the same rates as upon other property assessed on the tax rolls for *such* year"; i. e., the year in which the return is made. Section 7 provides:

"Every owner who becomes possessed of such motor vehicle during any year after 1925 upon which the property tax has not been paid in this state for that calendar year shall, before applying for registration or license plates, pay the property tax thereon for the balance of such year.

"The county treasurer shall fix the valuation of such motor vehicle, * * * and collect the taxes thereon at the rates levied for the current year, collecting one-twelfth of the annual tax for each month of that calendar year for which the tax is to be paid."

The uniform construction put upon these provisions by the taxing officials is that the motor vehicle returned for taxation under the terms of this act, say in 1928, is extended on the tax rolls at the 1928 rate for other property. We accept this uniform practice as an aid to construction, and we think the construction of the terms of the act itself warrants the practice followed by the taxing officials. In any event, it does not appear to us that, even if the owner of the motor vehicle is required to pay a higher tax rate than that fixed for the succeeding year, this presents a constitutional question.

Appellant's point (f) is that the act provides for discrimination between gasoline, electric, and steam vehicles, calling attention to the fact that electric pleasure vehicles for two persons pay a registration fee of $12, and for more than two persons, $25. It is apparent that electric cars pay a higher rate than the gasoline driven cars such as appellant owns, and we take notice of the fact that the average registration fee on a gasoline driven pleasure car is less than $10. So appellant is not prejudiced because electrically driven cars are required to pay a higher registration fee, and, besides, section 1 of article 8 of the Constitution, quoted supra, has no application to license or privilege taxes. See Cooley on Taxation (4th Ed.) § 155.

The provision requiring that the owner of a motor vehicle, before operating the same upon the public highways, shall have paid a property tax thereon. and that

the registrar of motor vehicles shall, before issuing license plates for such motor vehicles, require satisfactory evidence that the property tax on such motor vehicle has been paid for the period for which registration is desired, are not incongruous and disconnected with the provision requiring a license or privilege tax upon motor vehicles as a condition precedent to the operation of the same upon the public highways. "It is competent for the state, or for a municipality to which the power has been delegated, to annex any condition to the granting of a license which it deems proper." 25 Cyc. "Licenses," p. 622. See, also, City of Roswell v. Jacoby, 21 N. M. 702, 158 P. 419. The requirement of the payment of both a city and a state tax as a condition precedent to the actual issuance of the license, has been upheld. See Sights v. Yarnalls, 12 Grat. (53 Va.) 292; In re Kalana, 22 Hawaii, 96, Ann. Cas. 1926D, 1094. In the latter case, it was held that the registrar may restrict the rights of a delinquent taxpayer by making the payment of the accumulated taxes prerequisite to the procuring of a hack driver's license. In a case note following this decision are collected other instances of valid statutes imposing restrictions on the exercise of rights by a delinquent taxpayer, such as statutes providing that the registrar of deeds shall refuse to record any instrument not having on it a certificate of the payment of taxes due on the land covered by the instrument; statutes making the payment of taxes a qualification for voting have been upheld, and our Constitution imposes such a qualification for voting on proposed bond issues: the legislation of Georgia required the payment of all taxes on a debt before allowing the holder to recover a judgment thereon. This statute was upheld.

We have considered every argument or proposition propounded by the learned counsel for the appellant whether strictly speaking they presented constitutional questions or not, and have not found anything which renders the act void.

The judgment is therefore affirmed, and the cause remanded, and it is so ordered.

PARKER, C. J., concurs.

Mr. Justice WATSON, being absent, did not partici-
pate in this opinion.