101 P.2d 183

JOHNSON v. GREINER, County Clerk.

No. 4534.

Supreme Court of New Mexico.
March 12, 1940.

Filo M. Sedillo, Atty. Gen., A. M. Fernandez, Asst. Atty. Gen., and Richard E. Manson, of Santa Fe, for appellant.

O. O. Askren, of Roswell, and Thomas E. Mears, Jr., of Portales, for appellee.

JOHNSON, District Judge.

Appellee, plaintiff below, filed suit in the District Court of Chaves County against appellant, the County Clerk of said county, to recover the sum of twenty five cents. The complaint alleges that appellee, on November 1, 1939, presented a chattel mortgage for filing with the usual statutory fee, and that appellant county clerk refused to file said chattel mortgage unless the appellee would pay an additional fee of twenty five cents; that appellee thereupon paid to the appellant, as such clerk, under protest, the additional sum of twenty five cents and that said sum has not been transferred to the State Treasurer and is now in the hands

of said clerk. It is then alleged that said fee of twenty five cents was claimed by said Clerk to be due said office under Section 13 of Chapter 112 of the Session Laws of 1939 of the State of New Mexico.

The complaint then challenges the constitutionality of said Chapter 112 on several grounds including the ground stated in paragraph 4-d, wherein appellee alleges: "That Chapter 112 of the Laws of 1939, as passed, is in contravention of Section 16 of Article IV of the Constitution of the State of New Mexico, for the reason that the bill embraces more than one subject; that is to say, one subject is for the purpose of appropriating a fund for the reconstruction of a capitol building; and, second, a fund created for the purpose of buying lands to be used as public parks and operating of the same, if such lands of scenic beauty may be acquired by the Board, and that said bill was not a general appropriation bill as defined as an exception in said Section 16."

To this complaint the county clerk filed a demurrer. Paragraphs III–d and IV of said demurrer are in the following language:

"III–d. Plaintiff's complaint fails to allege sufficient facts showing that Chapter 112 of the Laws of 1939 contravenes Section 16 of Article IV of the Constitution of the State of New Mexico, for the reason that the complaint and Chapter 112, supra, show on their face that said Chapter 112, supra, does not embrace more than one subject in the sense prohibited by Article IV, Section 16, of the Constitution, all allegations as to unconstitutionality being mere conclusions of the pleader."

"IV. That said complaint fails to state a cause of action entitling plaintiff to relief because said complaint shows upon its face that it is an action for the recovery of a fee or tax levied pursuant to the provisions of Chapter 112, New Mexico Session Laws of 1939 and paid under protest by plaintiff; that there is no authority in law, by statute or otherwise, for the payment of such tax under protest and for a suit to recover the same; further, said complaint does not show said tax was paid by reason of any force, fraud or compulsion."

The district court sustained appellant's demurrer on all grounds except those stated in Paragraphs III–d and IV, and as to Paragraphs III–d and IV, the demurrer was overruled. Both parties took exceptions to the ruling of the Court, and both elected to stand on their pleadings and refused to plead further. The District Court accordingly gave judgment in favor of appellee and against appellant for the sum of twenty five cents. The defendant has prosecuted this appeal.

The first question to be determined is whether or not appellee can maintain this suit. Counsel have not called our attention to any special statute authorizing a taxpayer to pay under protest a tax or fee of the character involved in this case. The general rule under such circumstances has been stated to be: "In the absence of a special statute to the contrary, the fact that an illegal tax is or is not paid under

protest is of no importance. If payment of an illegal tax is made under duress, it need not be paid under protest to entitle the taxpayer to recover it back, if he makes it clear that his payment is involuntary, and a protest in such a case is important only as evidence that the payment was the effect of the duress." 26 R.C.L., page 459, Sec. 414.

Tested by this rule, the appellee may sue to recover the tax paid if the payment was made under duress. Appellee claims the payment was under duress; appellant denies that there was any compulsion, and asserts that appellee had a number of adequate remedies such as injunction or mandamus. Sec. 1, Chap. 54, Session Laws of 1935 (Sec. 21-102, 1938 Supp. to the New Mexico Statutes, Annotated, 1929 Comp.) provides that every chattel mortgage or a copy thereof, shall be filed in the office of the County Clerk, and: "Failure to so file such chattel mortgage, or copy thereof, shall render the same void as to subsequent purchasers or mortgagees without notice, as to judgment or attaching creditors from the date of entry of such judgment or levy of such attachment; as to trustees in bankruptcy from the date of adjudication in bankruptcy; as to receivers from the date of filing the order of appointment, and as to assignees for the benefit of creditors from the date of the recording of the assignment."

Failure of appellee to file his chattel mortgage would expose him to the risk of losing his security under the filing stat- ute. Every minute might prove important. In effect, the county clerk compelled appellee to pay the twenty five cent fee or risk the loss of his security. It would be difficult to find a clearer case of duress, and we therefore hold that appellee is entitled to maintain this action.

We now turn to appellee's attack upon the constitutionality of said Chapter 112 upon the ground that it contravenes Sec. 16 of Art. IV of the Constitution, which reads as follows: "The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed * * *."

No contention is made that the subject of the legislation is not expressed in the title of Chapter 112. The sole challenge is that Chapter 112 embraces more than one subject.

The title of said Chapter 112 reads as follows: "An Act Authorizing the Alteration, Reconstruction and Redesigning of the Capitol Building and Executive Mansion at Santa Fe, the Erection of Additional Buildings, the Acquisition of Additional Lands in Santa Fe, the Acquisition of Lands Elsewhere in New Mexico for Park Purposes; Imposing a Tax on the Privilege of Filing or Recording Instruments in the Offices of the County Clerks, Authorizing the Anticipation of the Proceeds of Such Tax by the Issuance and Sale of Debentures, Creating a Capitol Buildings Improvement Commission, Investing in It the Enforcement of This Act and Declaring an Emergency."

Section 1 of said Act expresses the purposes of the legislation, and Section 2 thereof provides the appropriation:

Sec. 1. "That for the purpose of providing suitable and adequate quarters for the various legislative and executive departments of the State of New Mexico, and relieving the present congestion and lack of suitable and adequate quarters and offices in the present capitol building, and for the purpose of making the architectural design of said capitol building appropriate to New Mexico, the alteration, reconstruction and redesigning of said capitol building and of the executive mansion, the erection of new and additional buildings at Santa Fe, to house the legislative and executive departments of the State, and the acquisition of additional land adjoining the present site of said capitol building, or elsewhere in Sante Fe, and the acquisition of lands elsewhere in New Mexico for park purposes, are hereby authorized in the manner provided by this act."

Sec. 2. "There is hereby appropriated out of the fund in the State Treasury, to be known as the Capitol Buildings Improvement Fund, the sum of Five Hundred Thousand Dollars ($500,000.00), or so much thereof as may be necessary for the purposes specified in Section 1 hereof, except for the acquisition of lands for State parks, and for this last mentioned purpose, there is hereby appropriated out of said fund the sum of Two Hundred Fifty Thousand Dollars ($250,000.00)."

Section 3 creates a Capitol Buildings Improvement Commission consisting of the Governor and four other members appointed by the Governor. Sections 4–11, inclusive, relate to the organization of said commission and to its powers and duties. These sections outline in detail the various powers and duties of the commission with respect to the alteration and reconstruction of the present capitol building and executive mansion, provide the method of acquiring additional capitol grounds, and authorize the purchase of all necessary furniture and equipment.

The only part of the Act dealing specifically with the acquisition of lands for park purposes is contained in Section 12: Sec. 12. "Said Commission is further authorized to acquire by donation or purchase, lands located in this State, which by reason of their scenic beauty or adaptability to recreation purposes are, in the opinion of the Commission, suitable for State park purposes, and to pay for the same out of the funds appropriated by Sec. 2 hereof, for the acquisition of lands for State Parks. Any lands so acquired shall be protected and administered by the Commission, or by any bureau or office of the State, by agreement with the Commission, until the Legislature shall provide otherwise."

Section 13 levies a tax on the privilege of recording or filing instruments in the offices of the County Clerks of the State; fifty cents for each instrument recorded, twenty five cents for each instrument filed. Taxes so collected must be kept in a separate

fund and remitted monthly to the State Treasurer and placed by the State Treasurer in the "Capitol Buildings Improvement Debenture Fund," for the purpose of paying the principal and interest of the debentures authorized by the Act.

The remaining sections of the Act relate to the issuance and sale of the authorized debentures, not exceeding $750,000, and to other details concerning the debentures with which we are not here concerned.

The controlling general principles here applicable, have been laid down in the cases of State v. Ingalls, 18 N.M. 211, 135 P. 1177; State v. Miller, 33 N.M. 200, 263 P. 510; and State v. Mirabal, 33 N.M. 553, 273 P. 928, 930.

 This Court quoted with approval, in State v. Mirabal, supra, from Johnson v. Harrison, 47 Minn. 575, 50 N.W. 923, 28 Am.St.Rep. 382, the quotation being in part, as follows: "The term 'subject,' as used in the constitution, is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject."

Appellant contends that Chapter 112 does not contravene Art. IV, Sec. 16 of our Constitution in view of the broad and liberal construction we must give this constitutional provision. Appellant's position is that there are two general ideas (and possibly a third) running through this act, to either of which general ideas or subjects all matters treated in the act may be considered germane. These two general ideas or subjects are (1) public improvement and betterment, (2) financing the acquisition, repair and improvement of state properties. We quote from appellant's brief in chief: "In the case at bar it is submitted that the broad general purpose of Chapter 112, supra, is public improvement by erecting, remodeling or repairing buildings and acquiring grounds therefor or for public parks. The rationale of the act is for public improvement and betterment."

Later in said brief appellant says: "Indeed, the broad purpose of this act, as gathered from the four corners of the bill, as well as from its title, is to provide funds, means and ways for the acquisition, repair and improvement of state properties."

In their reply brief counsel for appellant make this statement at page 10 thereof:

"Had this act provided for the financing of the capitol buildings, and as a part of the same act it had undertaken, not to

finance the state parks, but to provide for their management and regulation, the charging of fees to visitors, and other such matters, two subjects of legislation would have resulted. The objects of legislation would have been the same, but the subjects of legislation relating thereto would not.

"The subject of this act is the financing of these public improvements, it could have still been made broader by including all state properties. When repairs, alterations or remodeling of the buildings is complete, their management remains as before in the custody of the Capitol Custodians Board. The state parks are turned over to the State Parks Commission."

Counsel for appellant have made a dangerous admission and have also misread the Act. Section 12 contains this language: "Any lands so acquired shall be protected and administered by the Commission, or by any bureau or office of the State, by agreement with the Commission, until the Legislature shall provide otherwise."

The Act does provide for the commission to manage and regulate the state parks it may acquire. Under Chapter 112 the Commission must administer the state parks it acquires unless it contracts with some bureau or office to administer such parks for it. There is nothing in the Act requiring the Capitol Buildings Improvement Commission to turn the acquired state parks over to the State Parks Commission. The Act very definitely does provide for the administration of acquired parks by the

Commission, and no one could force the Commission to give up the control and management of such parks unless and until some subsequent legislature should see fit to do so. Counsel for appellant acknowledge that management of state parks is a different subject of legislation from financing state properties. If we accept appellant's position as sound, that the general subject of the Act is financing state properties (which we do not), we would then be obliged to upset the Act on appellant's own admission, because it would then contain a subject entirely unrelated to financing, to-wit: administration or management of state parks. We presume, if the general subject of the Act was admitted to be improvement and betterment of state properties, that the administration and management of parks would still have to be considered an unrelated subject. Counsel for appellant apparently would fail to reach their desired destination even if we should agree with them as to the broad general subject of the Act.

But, we do not agree with appellant's position that the Legislature in enacting Chapter 112 had in mind either the broad subject of public improvement or the broad subject of financing state properties.

For the purpose of argument we will assume that the Legislature may enact legislation the general subject of which is the improvement and betterment of state properties, and that the Legislature may likewise under proper circumstances, enact legislation the general purpose or subject of which is financing of state properties.

But, the assumption that improvement and betterment of state properties or financing of state properties may be the broad subject of legislation gets appellant nowhere in this case if the general subject of Chapter 112 was, in fact, something entirely different.

And we conclude from the title of Chapter 112 and from the Act itself that the general subject of the Act is "the State Capitol building and grounds in Santa Fe, New Mexico." Section 1 of the Act sets forth the main purpose of the legislation and that purpose is to provide suitable and adequate quarters for the various legislative and executive departments of the State and to relieve the present congestion. Section 1 also recites a further purpose of making the architectural design of the Capitol building appropriate to New Mexico. The Commission created by the Act is designated "The Capitol Buildings Improvement Commission." The fund in which the taxes are to be kept by the State Treasurer is the "Capitol Buildings Improvement Debenture Fund." Eliminate from Section 1 the words "and the acquisition of lands elsewhere in New Mexico for park purposes." Eliminate from Section 2 the words "except for the acquisition of lands for State parks, and for this last mentioned purpose, there is hereby appropriated out of said fund the sum of Two Hundred Fifty Thousand Dollars ($250,-000.00)." Eliminate from Section 27 the words "except the acquisition of lands for State parks." Strike out Section 12. Change the figures $750,000 to $500,000 in the appropriate places. What is the result? By eliminating one section of a total of twenty nine and by striking out not to exceed five lines elsewhere in the Act, we have a legislative enactment dealing solely and comprehensively with one subject, to-wit: "The State Capitol building and grounds in Santa Fe, New Mexico."

Holding, as we do, that the general subject of Chapter 112 is the State Capitol building and grounds in Santa Fe, New Mexico, can it be said that by any fair intendment the acquisition of lands elsewhere than in Santa Fe for park purposes is germane to the general subject of the Act? What possible relation either logically or in popular understanding can there be between the acquisition of State parks and the relief of the present congestion in the State Capitol building? What have State parks to do with the problem of altering or redesigning the Capitol? If a relationship or legitimate connection exists between State parks elsewhere than in Santa Fe and the general subject of Chapter 112, we confess our inability to discover the connection. The pressing need for adequate facilities to carry on the functions of State government has no relation to State parks either logically or in popular signification. Appellant has not denied that State parks are not germane to the general subject of Capitol buildings and grounds. What appellant has done is to ascribe to the Act a general subject which we fail to find present in it.

Counsel for appellant also suggest a third possible general subject for Chapter 112.

By reason of the fact that Section 1 refers to making the architectural design of the Capitol building "appropriate to New Mexico", and Section 12 authorizes the acquisition of lands for state parks "by reason of their scenic beauty," it is broadly hinted that esthetic considerations so permeate the Act that the general purpose of the Act may be said to be "the desire to make the State more attractive and presentable." We do not charge the Legislature with a lack of appreciation of the finer things of life by reason of our inability to discover any such general subject present in the legislation under consideration—we merely refuse to attribute to the Legislature such a broad general purpose until its members are more explicit and unreserved in expression. How far the Legislature may go under any of the three broad general subjects suggested by appellant without contravening Art. IV, Sec. 16, is a question which must await the event.

▮ We are reluctantly forced to the conclusion that said Chapter 112 contravenes Art. IV, Sec. 16 of the Constitution. The acquisition of State parks cannot be considered in any way germane to the general subject of the Act which we have found to be the State Capitol building and grounds in Santa Fe, New Mexico. We cannot escape the conclusion that two unrelated subjects are embraced in the bill.

Counsel for both appellant and appellee have cited many cases from other jurisdictions arising by reason of constitutional provisions similar to our own. These authorities have been of but little assistance. The difficulty lies not in the general principles but in the application of those principles to a particular set of facts. Each case necessarily stands on its particular facts. This Court heretofore called attention to the limited help that can be expected from other decisions. State v. Miller, supra.

The only authority cited by counsel for appellant which we believe justifies comment in this opinion is City of Louisville v. Board of Park Commissioners, 112 Ky. 409, 65 S.W. 860. An ordinance was passed by the general council of the City of Louisville providing for the submission to a vote of the people of the question whether $500,000 of bonds should be issued, $250,000 to be used by the Board of Park Commissioners in acquiring lands for park purposes, and the other $250,000 to be expended under supervision of the Board of Public Works in construction of sewers. The question submitted to the voters was "Are you in favor of the issuance of $500,000 of bonds by the city of Louisville for the construction of sewers and for the acquisition of tracts of lands for park property in the city of Louisville, as provided in the ordinance approved October 17, 1900?" The pertinent part of the majority opinion contains this statement: "The subject of the ordinance was single. It was the issuance of city bonds to the amount of $500,000. The mere statement of the purposes for which the proceeds of the bonds were to be expended does not vitiate the submission of the single question whether the liability is to be incurred."

The Kentucky courts have consistently followed the City of Louisville decision, although it contained a strong dissenting opinion. In Allen v. Cromwell, 203 Ky. 836, 263 S.W. 356, 357, the Kentucky court recognized that the position taken in the City of Louisville case was not in harmony with the decisions of many other courts, but concluded: "* * * There is much to be said in support of our position, despite its isolation."

Whether the "issuance of bonds" may under proper circumstances be the general subject of legislation although the proceeds thereof are to be devoted to several purposes is a question that we need not now decide. It is sufficient to say that the issuance of bonds is not the general subject of Chapter 112. We do, however, call attention to the decision of this Court in the case of Lanigan v. Gallup, 17 N.M. 627, 131 P. 997. It was there held that a municipality could not submit to the voters the joint proposition of issuing bonds for the double purpose of constructing a water works system and building a system of sewers. The decision in the Lanigan case is squarely in conflict with the City of Louisville case.

Constitutional questions other than the. one herein considered were ruled upon by the District Court adversely to appellee. No cross appeal was taken by appellee, but counsel request that we treat the matter as if a cross appeal had been taken "should the Court conclude such a cross appeal is necessary to consider these questions." In view of our conclusion that said Chapter 112 contravenes Art. IV, Sec. 16 of our Constitution, we deem it unnecessary to consider the constitutional questions that would have been presented on a cross appeal.

For the reasons stated, the judgment of the District Court is affirmed, and it is so ordered.

BICKLEY, C. J., and BRICE, SADLER, and MABRY, JJ., concur.

ZINN, J., did not participate.