13879

STATE EX REL. CRAWFORD v. STEVENS *ET AL.*

(175 S. E., 213)

*Mr. D. W. Robinson Jr.,* for petitioner,

*Messrs. John M. Daniel, Attorney General, J. Ivey Humphrey* and *J. Ingram Wilson, Assistant Attorney Generals,* for respondents,

June 22, 1934.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The petitioning taxpayer questions the legality of the proposed issuance of $7,374,700.00 certificates of indebtedness of the State of South Carolina, maturing in annual installments beginning ten years after date and ending twenty-four years after date, and bearing interest at a rate not exceeding 5 per cent. per annum.

The state proposes to use the proceeds of the sale of these certificates to pay the following 6 per cent. callable obligations of the state:

(1) $407,000.00 of outstanding one-year state highway notes, dated February 15, 1934, issued pursuant to an Act of February 10th, 1933 (38 St. at Large, p. 58), incorporating a new Section in the Code of 1932, to be known as Section 5973-A of the Code.

(2) $4,464,000.00 outstanding state highway certificates of indebtedness, dated February 15, 1933, payable February 15th, 1953, issued pursuant to Section 5973-A of the Code.

(3) $2,503,700.00 of outstanding written evidences of obligation, issued pursuant to Act of February 9th, 1932, (37 St. at Large, p. 1123).

In order to understand the questions presented, a brief history of these obligations is desirable.

In June, 1931, the State Highway Department, to finance its construction contracts, submitted its written request, supported by the data required by Section 5947 of the Code, to the Governor, who, satisfied of the sufficiency of the anticipated revenues, advertised for bids for $10,000,000.00 certificates of indebtedness. On receiving bids, the Governor and the state treasurer rejected all bids because the prices were not satisfactory.

With the approval of the Governor, the commission proceeded with its road building in anticipation of the subsequent sale of certificates of indebtedness. In this fashion, construction obligations of approximately $7,500,000.00 in excess of funds available from previous sales of certificates of indebtedness were incurred.

$5,000,000.00 was raised by the sale of short-term notes, pursuant to Section 5948 of the Code. These notes, later refinanced under the Act of February 10th, 1933 (38 St. at Large, p. 58, Code 1932, § 5973-A), are now evidenced by the State Highway notes ($407,000.00) and by the 20-year callable certificates of indebtedness ($4,464,000.00).

The remaining amount of $2,503,700.00, due contractors, became the "Written Evidence of Obligation," issued under the 1932 Act (37 St. at Large, p. 1123).

The first question presented is whether the State Highway Bond Act authorizes the issuance of certificates of indebtedness of the state to refund or pay the three classes of obligations mentioned above, to wit, the high-

way notes, the callable certificates of indebtedness, and the written evidences of obligation.

The purposes for which the State Highway Bond Act, originally passed in 1929 (36 St. at Large, p. 670), authorized the issuance of "Certificates of Indebtedness," are stated in Chapter 127 of the Civil Code (Section 5947 *et seq.*).

In Section 5947, we find that these certificates may be issued "for the purpose of completing the construction of the State Highway System and carrying out the provisions of this chapter."

Section 5948 provides for the issuance of short-term notes for the purpose of anticipating the sale of certificates of indebtedness, for the purpose of paying the principal or interest on any of the certificates of indebtedness, and for the renewal of short-term notes.

Section 5951 provides: "The proceeds of the sale of such highway certificates of indebtedness and of notes issued in anticipation of the sale of such certificates of indebtedness, shall be used by the State Highway Commission only for the construction or reconstruction of highways in the State Highway System, or for the purpose of paying notes, including interest, issued under this chapter * * * or for the purpose of paying other expenses authorized by this chapter to be paid out of such proceeds."

As Section 5951 expressly authorizes the use of the proceeds of the sale of certificates of indebtedness to pay notes issued under the provisions of Section 5948, it is clear that that portion ($407,000.00) of the obligation, represented by highway notes, may by the express terms of this section be refunded by the issuance of certificates of indebtedness.

The written evidences of obligation given to the materialmen and contractors by the State Highway Department pursuant to Act No. 601, of the Acts of 1932 (37 St. at Large, p. 1123) are obligations incurred in the "construction or reconstruction of highways," and are hence eligible for

payment out of the proceeds of the certificates of indebtedness.

The position is taken by the petitioner that these obligations to the contractors have now taken a different form by reason of the issuance of these evidences of indebtedness under the provisions of the Act of 1932. They were, however, incurred by the commission under its duty to construct a State Highway system. Sections 5974, 5975. The fact that the commission gave to the contractors and materialmen evidences of the obligation in written form does not alter the fact that these obligations were incurred in the construction of the State Highway system. There can be no doubt, therefore, that the proceeds of the sale of the certificates of indebtedness may properly be used to retire the written evidences of obligation.

The important question presented is whether certificates of indebtedness may be issued to refund outstanding certificates of indebtedness.

The petitioner takes the position that no authority is given for such refinancing, either in Chapter 127 or in the amendments of 1933 and 1934, and insists upon a narrow construction of Section 5951 of the Code.

It will be observed that Section 5948 authorizes the issuance of notes to pay the maturing "interest or principal of" any state highway certificates of indebtedness.

Section 5951 expressly authorizes the issuance of certificates of indebtedness to pay notes issued under the Act. It is therefore apparent that as the outstanding certificates of indebtedness are callable the State could call these certificates, paying them out of the proceeds of the sale of notes issued under Section 5948, and then pay those notes with the proceeds of the sale of new certificates of indebtedness.

It was clearly not the intention of the Legislature to require a circuitous method of refinancing the certificates of indebtedness; yet the narrow construction urged by the petitioner would lead to that result.

Again, in 1933, when the Legislature enacted Section 5973-A of the Code and made these certificates callable, it gave evidence of its intention that the broader construction suggested should be given to the words "construction or reconstruction of highways" found in Section 5951.

It is the conclusion of this Court that the callable certificates of indebtedness, issued under Section 5973-A of the Code, may be refinanced and paid out of the proceeds of the sale of new certificates of indebtedness.

The next question presented is whether the proposed issue of certificates of indebtedness must be payable in accordance with the terms of Section 5973-A, inserted in 1933.

That section, amending the Highway Bond Act, provides that certificates of indebtedness issued to retire the notes issued under Section 5948 should "mature on February 15, 1953, but shall be redeemable at the option of the State on any interest date prior to their maturity."

The petitioner's position is that as this section was inserted in 1933 it supersedes the provisions of the 1929 Act, Section 5964, Code 1932, which provides: "Each separate issue of said certificates of indebtedness shall mature in annual series or installments, the first of which annual series or installments shall mature not more than ten years after the date of the certificates, and the last not more than twenty-four years after said date."

The petitioner emphasizes the word "shall" as contained in the 1933 Act, arguing that only a callable certificate of indebtedness as distinguished from the serial form provided in the original Act can now be issued.

Bearing in mind that the fundamental rule of statutory interpretation is to give effect to legislative intent (*Gregg v. Query,* 166 S. C., 117, 164 S. E., 588), we must look at the purpose of the enactment of the 1933 Act. It is obviously to provide for the renewal or the funding of the $5,000,000.-

00 of outstanding highway notes which had been issued pursuant to Section 5948.

Under the original Highway Bond Act, certificates of indebtedness could not bear interest at a rate exceeding 5 per cent. per annum, and were required to mature serially. At the time of the enactment of the 1933 Act, the condition of the bond market was such that it was impossible to issue certificates of indebtedness in accordance with the provisions of the 1929 Act. The Legislature, therefore, passed the amendatory act, now Section 5973-A, with a view to re-financing these obligations on a callable basis providing for 6 per cent. interest, and giving the State the option to refund these obligations at a lower interest rate when the bond market was in a more favorable status.

In view of the interest rate paid by the State on its certificates of indebtedness, it cannot be assumed that the Legislature intended by the 1933 Act to prevent the issuance of serial bonds, which can be sold at better prices than those callable at the option of the State.

The familiar rules of construction require the reconciliation of this amendatory Act with the State Bond Act, if possible. The construction that the amendment was intended merely to supply an additional and alternative method of issuing notes or certificates of indebtedness reviewed in the light of legislative purpose is entirely consistent with the language of the 1933 Act. This Court, therefore, has reached the conclusion that the correct construction of that Act is merely to provide an alternative method of issuing certificates of indebtedness.

Another question arises as to whether a proper construction of Section 5973-B (enacted on April 27, 1934), requires that the certificates of indebtedness issued to pay the outstanding "Written Evidences of Obligation" must be 20-year callable certificates, following the language of the 1934 Act.

In addition to the reasons given heretofore in the discussion of a proper interpretation of the 1933 Act, it is to be noted in the 1934 Act the word "shall" is not used in Section 1, but the Act provides "State Highway Certificates of Indebtedness * * * may be issued."

Following our construction of the 1933 Act, it therefore follows, that Section 5973-B does not repeal the authority to issue certificates of indebtedness in accordance with the terms provided in the State Highway Bond Act, particularly Section 5964.

The last sentence in Section 2 of the Act of 1934 is an additional reason to sustain our interpretation that the 1933 and 1934 Acts were not intended to prevent a refinancing of the State highway obligations, under the terms of the 1929 Act. This sentence reads as follows: "This section shall not serve to prevent the refinancing of any outstanding State Highway obligations, nor shall this section be effective after the first day of January, 1939."

It is obvious that this sentence, taken with the entire Section 2, is for the purpose of preventing an increase until 1939 of the aggregate indebtedness of the State Highway Department, and, also, it is intended to expressly leave to the State Highway Department and the State the right to. refinance existing obligations.

The remaining question raised by the petition is whether the "Written Evidences of Obligation" constitute valid indebtedness, which may be refunded under the provisions of Section 11, Art. 10 of the Constitution.

The position of the petitioner is that this indebtedness is an indebtedness of the State incurred through the State Highway Department, without the vote of the people, in accordance with Section 11, Art. 10.

It is to be observed that there is no statutory question involved, in that the Legislature has seen fit to validate these obligations by its Act of March 19th, 1934. *Hodge v.*

*Clarendon County School District No. 9,* 80 S. C., 518, 61 S. E., 1009.

The answer to this position is that the State Highway Department was authorized and directed under the provisions of the State Highway Bond Act to construct a State highway system, and to do the things necessary to accomplish that result. The most obvious of these things was the letting of contracts for labor and material for this construction work.

The Act contemplated that funds to meet these obligations would be obtained from the issuance of certificates of indebtedness or notes, and from surplus revenues from the gasoline and motor vehicle license tax.

The present indebtedness, though evidenced by "Written Evidence of Obligation," is in its essence the same debt in-incurred to the contractors in the construction program. As the Legislature has only authorized the State Highway Department to use revenues derived solely from certain taxes to pay these obligations, they are not debts or obligations within the meaning of the constitutional provisions. *Cathcart v. City of Columbia,* 170 S. C., 362, 170 S. E., 435; *Roach v. City of Columbia (S. C.,)* 174 S. E., 461.

Assuming, however, that the State Highway Commission had authority to pledge the general credit of the State to pay these obligations, there is no violation of Section 11, Art. 10, in that these gasoline and license taxes constitute a fund which may reasonably be expected to be sufficient to meet the matured obligations without resorting to property tax. *State v. Moorer,* 152 S. C., 455, 150 S. E., 269; *Sullivan v. City of Charleston,* 133 S. C., 189, 133 S. E., 340; *Id.,* 133 S. C., 156, 130 S. E., 872, 876; *Briggs v. Greenville County,* 137 S. C., 288, 135 S. E., 153; *Evans v. Beattie,* 137 S. C., 496, 135 S. E., 538.

The fact that these obligations were originally intended to be paid within thirty or sixty days after they were incurred, and have by refunding operations had their maturities ex-

tended, does not alter their character. The refinancing of existing obligations is not the creation of "any further debt or obligation" within the meaning of Section 11, Art. 10.

For the foregoing reasons, it does not appear to us that the petitioner is entitled to the injunction he seeks, and therefore his application therefor is refused.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN, concur.