MAYOR AND ALDERMEN OF KNOXVILLE *v.* W. H. GASS.

(*Knoxville.*   September Term, 1907.)

1. **CONSTITUTIONAL LAW.** Title of a legislative bill express-
ing a general subject need not express the means or instru-
mentalities of accomplishing the purpose of the act.

   If one general subject is expressed in the title of an act, it is
   not necessary that all the means or instrumentalities by which
   the general purpose of the act is to be accomplished. shall
   appear, either in the title or the body of the act, provided the
   subsidiary matters are germane to the general subject ex-
   pressed in the title. (*Post, pp.* 440-457.)

   Constitution cited and construed:   Art. 2, sec. 17.

   Cases cited and approved:   Cannon v. Mathes, 8 Heisk., 505, 519;
   State v. Lasater, 9 Bax., 584; State v. Fickle, 3 Lea, 79; State
   v. Yardley, 95 Tenn., 546; McElwee v. McElwee, 97 Tenn., 649;
   Ryan v. Terminal Co., 102 Tenn., 128; State v. Brown, 103 Tenn.,
   454; State v. McMinnville, 106 Tenn., 384; Carroll v. Alsup, 107
   Tenn., 266; Condon v. Maloney, 108 Tenn., 83; State, ex rel.,
   v. Hamby, 114 Tenn., 363, 364.

2. **SAME.** Same. Title of a legislative bill may be broader
than the subject of legislation enacted, when.

   The constitutional provision that "No bill shall become a law
   which embraces more than one subject, that subject to be
   expressed in the title," does not apply to the title, but to the
   body of the bill.   It is no objection to the bill that its title
   is broader than the legislation contained in its body, or covers,
   or can be construed to cover, other subjects of legislation, if
   the real subject of legislation is therein expressed and not
   obscured by foreign matters. (*Post, p.* 451.)

Knoxville v. Gass.

Constitution cited and construed:  Art. 2, sec. 17.

Case cited and approved:  State, ex rel., v. Hamby, 114 Tenn., 364.

3.  **SAME. Same. Same. Issuance of bonds for municipal purposes is the subject expressed in the title and body with fuller details; case in judgment.**

A statute (Acts 1907, ch. 361) whose caption and body authorize certain municipalities to issue a certain amount of bonds with which to fund the floating debts of said cities, to increase and improve the fire departments, to widen the streets, and to pay damages to property holders caused by the erection of viaducts and bridges; and also authorize said cities to issue another certain amount of bonds with which to build sewers, contains in its caption and body but one subject of legislation, namely, the issuance of bonds for municipal purposes, and therefore, it is not unconstitutional as violative of the constitutional provision that "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

Acts cited and construed:  Acts 1907, ch. 361.

Constitution cited and construed:  Art. 2, sec. 17.

---

## FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— Jos. W. Sneed, Chancellor.

J. W. Culton, City Attorney, and S. G. Heiskell, for Knoxville.

Jno. W. Green, for Gass.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This case was presented to the chancellor on a stipulation of agreed facts in accordance with the provisions of section 5206 of Shannon's Code, and the only question for determination is in respect of the constitutionality of chapter 361, p. 1203, of the Acts of 1907, entitled:

"An act to authorize municipalities of Tennessee having a population by the census of 1900, or any subsequent federal census, of not less than thirty thousand nor more than forty thousand, to issue $165,000 of coupon bonds, with which to fund the floating debts of said cities, to increase and improve the fire department, to widen the streets, and pay damages to property holders caused by the erection of viaducts and bridges; also to authorize said cities to issue $15,000 of coupon bonds with which to build sewers.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that all municipalities in Tennessee having a population by the federal census of 1900 or any subsequent federal census of not less than 30,000 nor more than 40,000, be, and they are hereby authorized and empowered to issue in their corporate capacity coupon bonds, to be signed by the mayor and countersigned by the recorder, in the manner and under the restrictions hereinafter provided to the amount of one hundred and sixty-five thousand dollars ($165,000), to be appropriated to fund the floating debts of said cities, increase

and improve their fire departments, widen streets, and pay damages to property holders caused by the erection of viaducts and bridges: provided, that said bonds or proceeds thereof shall be issued exclusively for the purpose above set out and in such manner within the corporate limits of said cities as may hereafter be determined upon by the mayor and aldermen of said cities.

"Sec. 2.   Be it further enacted, that the cities aforesaid shall be, and they are hereby, authorized and empowered to issue an additional sum of fifteen thousand dollars ($15,000) in bonds for the purpose of building sewers, which bonds shall be signed by the mayor and countersigned by the recorder, and the proceeds thereof shall be used exclusively for the purpose of building sewers and at such points in said cities as may be hereafter determined upon by the board of mayor and aldermen of said cities.

"Sec. 3.   Be it further enacted, that the bonds issued under the first and second sections of this act shall be of such denomination and bear such rate of interest not to exceed four and one-half per cent. as may be determined upon by the mayor and aldermen of said cities, and said bonds shall be issued, payable at the end of thirty years from date of issuance, and interest and principal shall be payable in gold at such places within or without the State of Tennessee as the mayor and aldermen of said cities may determine, and the interest shall be payable at such times as the mayor and aldermen may deter-

mine, and said bonds shall recite the date of issuance, the date of maturity, the fact that a special tax has been authorized to be levied to create a sinking fund for their payment, and shall include such other matters of law or fact as the mayor and aldermen of said cities may determine to be essential to protect the respective interests of said cities and the purchasers of said bonds, and said bonds shall be sold by the mayor and finance committee of said cities.

"Sec. 4. Be it further enacted, that the bonds provided for and issued under this act shall in no case be sold for less than par, and the coupons attached thereto shall at maturity be received by the mayor and aldermen of said cities for all taxes due said cities, except sinking fund taxes levied for the retirement of this or any other bond issue of said cities and except for school taxes.

"Sec. 5. Be it further enacted, that as soon as the bonds herein authorized or any portion thereof shall have been issued thereunder the mayor and aldermen of said cities shall provide by ordinance a sinking fund wherewith to retire said bonds, and said funds shall be used exclusively for sinking fund purposes, and be sufficient, with its accumulations, as nearly as may be estimated, to meet and retire the principal indebtedness at maturity, and said sinking fund shall be intrusted to the management of the sinking fund commissioners now existing in said cities or may hereafter be appointed from time to time.

"Sec. 6.    Be it further enacted, that all laws or parts of laws in conflict with this act be, and the same are hereby, repealed, and that this act take effect from and after its passage, the public welfare requiring it."

It may be observed that this act, while passed in the form of a general law, is only applicable, on account of its limitations as to population, to the city of Knoxville.

In accordance with the provisions of the act, the mayor and aldermen of the city of Knoxville have issued said series of bonds, the validity of which has been challenged on the ground that the title to said act embraces more than one subject and is therefore violative of article 2, section 17, of the constitution of Tennessee, which provides: "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

The legal criticism on the title is that it provides for the issuance of $165,000 of coupon bonds to fund the floating debts, to increase and improve the fire departments, to widen streets, and pay damages to property holders caused by the erection of viaducts and bridges and that the enumerated purposes for which this series of bonds may be issued constitute one subject, and that the title then proceeds to introduce another subject in the following clause: "Also to authorize said cities to issue fifteen thousand dollars of coupon bonds with which to build sewers."

It is said that these two subjects are each distinct and are not germane to each other. The section of the constitution invoked in the present case has frequently been before this court for construction as applied to particular acts passed by the general assembly. The uniform holding of this court has been that, if one general subject is expressed in the title, it is not necessary that all the means or instrumentalities by which the general purpose of the act is to be accomplished should appear, either in the title or in the body of the act, provided the subsidiary matters are germane to the general subject. The course of judicial decision on this subject may be illustrated by the following cases:

In *Cannon* v. *Mathes*, 8 Heisk., 505, the act under consideration was entitled: "An act to fix the state tax on property." Section 4 of that act increased the tax on all privileges fifty per cent. upon the existing basis. It was held that a title purporting that an act is to impose a tax on property is sufficient to support a law embracing taxes on privileges as well as on property. It was said in that case, quoting with approval the text of Cooley on Constitutional Limitations, that:

"The general purpose of these provisions is accomplished when a law has but one general subject, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone would not only be unreasonable,

but would actually render legislation impossible."

He adds:

"The generality of a title is no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. The legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title in defining it."

Referring to the particular statute under consideration Judge Nicholson said:

"The general subject of the act is revenue, and each and every section has direct reference to the subject of revenue in its different phases. It cannot be said that there is the least incongruity among the provisions of the four sections. They have a natural, if not a necessary, connection with and dependence upon each other. Revenue is the general subject of the act. Its amount and its disbursement from the treasury are the special objects provided for. It is clear that the act is not obnoxious to the objection that it embraces more subjects than one."

In *State v. McMinnville*, 106 Tenn., 384, 61 S. W., 785, it was held:

"A statute whose general subject is the release of municipal corporations from liability to the State for certain taxes on litigation, that should have been, but were

not, collected in their police courts, is not amenable to
constitutional objection, as embracing more than one
subject, because of its provisions that all pending act-
ions for such taxes should be dismissed and that no new
actions should be brought for same. The mandate to dis-
miss pending actions, and the prohibition against bring-
ing new ones, are but parts of the same general subject."

The court said:

"A statute with one general subject may embrace sub-
divisions, provisos, and exceptions pertinent to that sub-
ject, and so many of them as may be grouped without in-
congruity."

In *Carroll* v. *Alsup*, 107 Tenn., 266, 64 S. W., 195, the
title of the act under consideration was:

"An act to provide more just and equitable laws for
the assessment and collection of revenue for State, coun-
ty, and municipal purposes, and to repeal all the laws
in conflict with the provisions of this act whereby rev-
enue is collected from the assessment of real estate,
property, privileges and polls."

The body of the act contained a provision for the as-
sessment of quasi public and manufacturing corpora-
tions different from that applied to other classes of cor-
porations, in that the shares of stock of the former
classes of corporations were not to be assessed to stock-
holders; compensation for the difference being made in
the manner of assessing the properties of the companies.
This court held that the act did not embrace two separ-
ate and distinct subjects, but only the general and

broad subject of the just and equitable assessment and collection of State, county, and municipal taxes; that this broad subject expressed in the title covers all the provisions of the act, including the manner of assessing property of corporations; and the matters complained of as exemptions are in fact only different methods of taxing the property of different corporations.

In *Condon* v. *Maloney,* 108 Tenn., 83, 65 S. W., 871, it was held that chapter 8, Acts of 1901, providing for a road law for Knox county, was not obnoxious to constitutional objection as embracing two subjects, although it deals in its body with public roads and the county workhouse.    It was shown that by the act of 1891 (Shannon's Code, section 1642) "all persons confined in county jails or workhouses shall be available to the commissioners for the purpose of working on the public highways." Thus the two subjects of public roads and of workhouses have been connected in the history and in the legislation of Tennessee until it is fair to say that the connection has become organic, and it is entirely within the power of the legislature, in seeking to secure good roads, to place these two matters thus connected under one control.

In *State, ex rel.,* v. *Hamby,* 114 Tenn., 363, 364, 84 S. W., 622, it was held that an act entitled "An act to create and establish four civil districts in the county of Cumberland in lieu of the thirteen civil districts now existing, to define the boundaries of the same, and to abolish certain offices in said county and to provide for

the election of their successors," embraced but one subject. The objection to the act was that it embraced two subjects, as follows: (1) Redistricting Cumberland county; and (2) the abolition of certain offices in that county.

In *State* v. *Yardley,* 95 Tenn., 546, 32 S. W., 481, 34 L. R. A., 656, the act was entitled: "An act to protect hotel, inn and boarding house keepers." The body of the act provided: (1) That certain fraudulent acts to the prejudice of hotel, inn, and boarding house keepers should be misdemeanors; (2) what shall constitute *prima facie* evidence of fraudulent intent in prosecutions for these acts; and (3) for the sale of baggage and other property left by defaulting patrons of hotels, inns, and boarding houses. It was held by this court that all matters which are naturally and reasonably connected with the subject of a statute, either directly or indirectly, and all measures which will or may facilitate the accomplishment of the purposes of the statute are properly connected in it, and that the act in question did not embrace more than one subject.

In *Ryan* v. *Terminal Co.,* 102 Tenn., 128, 50 S. W., 748, 45 L. R. A., 303, the act under consideration was entitled: "An act to amend an act entitled 'An act to provide for the organization of railroad terminal corporations and to define the powers, duties and liabilities thereof.'" The three sections of the act empowered railroad companies which entered into contracts with

a terminal company to guarantee the principal and interest of bonds issued by such company, as well as other contracts made by it in regard to its corporate business, and also to subscribe for, hold, and dispose of the capital stock or bonds which may be issued by the terminal corporation.    It was held that the body of the act was germane to the title which embraced only one subject.

In *McElwee* v. *McElwee*, 97 Tenn., 649, 37 S. W., 560, the act under consideration was entitled: "An act to extend the statute of limitations to liens on realty and to quiet titles."    It was objected that, while the caption related to liens on realty and to the quieting of titles, the body of the act embraced liens retained in deeds, mortgages, deeds of trust, and assignments of realty to secure debts; that the caption of the act simply proposed to bar liens in ten years, and cannot be made to include mortgages, deeds of trust, and assignments to secure debts.    The court said:

"It is evident that the general scope of this act in its caption and body is to provide and fix a limitation of the life of liens on real estate, no matter how created, in order to quiet titles, and is not subject to the criticism made.    This constitutional provision (article 2, section 17) has, by the court, been given liberal construction, so as not to embarrass legislation and prevent the beneficial purposes for which it was adopted."

In *State* v. *Lasater*, 9 Baxt., 584, the title of chapter 130, p. 216, Acts of 1875, was attacked.    It was entitled "An act to define the rights, duties and liabilities of innkeepers, common carriers and proprietors of places of

public amusement." The second section was as follows:

"That a right of action is hereby given to any keeper of any hotel, inn, theater, public house, common carrier, and restaurant, against any person guilty of turbulent or riotous conduct in or about the same, and any person found guilty of so doing may be indicted and fined not less than one hundred dollars, and the offiender shall be liable to a forfeiture of five hundred dollars, and the owner or person so offended against may sue in his own name for the same."

The subject of inquiry was whether the section last quoted was upon the same subject embraced in the title. The court said:

"Here the subject is the rights, duties and liabilities of innkeepers, common carriers, proprietors of places of public amusement, etc. Now a provision that no turbulent or riotous conduct shall be allowed in such places, and providing for the punishment of the offenders, we think, is not legislation on a different subject. Looking to the evil to be remedied, and bearing in mind that there must be a clear violation of the constitution before we can declare an act void, we hold that this act is not void on this ground."

It is unnecessary to multiply the cases in which this section of the constitution has been considered, since those already cited illustrate the liberal construction which this court has uniformly given to that provision of the constitution. It is to be observed that in the cases

Knoxville v. Gass.

already cited, and in nearly all on the the subject, decided by this court, the precise question was whether the body of the act under consideration was embraced within the title.

The exact question presented on this record is whether two distinct subjects are expressed within the title of the act of 1907. As stated by this court in *State, ex rel.,* v. *Hamby,* 114 Tenn., 364, 84 S. W., 622:

"The constitutional provision invoked does not apply to the title, but to the body of the bill, the effective, operative part of the statute, the law that is made. It is no objection to a bill that the caption is broader than the enacting part, or covers, or can be construed to cover, other subjects, so that the real subject of legislation is therein expressed and not obscured by foreign matters."

It is conceded that in the case *sub judice* the same objection made to the title is also presented in the body of the act, providing for the isssuance of municipal bonds for separate and distinct purposes. In other words, the objection is that the title is restrictive, and limits the power conferred by the act to the issuance of two classes of bonds, and that neither class is germane to the other; hence it is said two subjects are presented both in the title and in the body of the act.

A similar objection was made to the act under consideration in the case of *State* v. *Fickle,* 3 Lea, 79. The act was entitled:

"An act to establish a chancery and law court at Bristol in the county of Sullivan."

The first nine sections of the body of said act related to a chancery court to be organized and held at Bristol by the chancellor of the First division, while the remaining sections provided for the establishment of a law court at Bristol as one of the courts of the First circuit.   Said this court:

"The argument is that this act embraced two subjects—one, the establishment of a chancery court; the other, the establishment of a law court. . . .   Shall we say that the establishment of a chancery court at Bristol is one general subject, and the establishment of a law court is another general subject, and that it is necessary, in order to maintain the integrity of the clause of the constitution in question, to hold that these two general subjects should be accomplished by separate acts?   Is the establishment of these two courts at the same place two general subjects, incongruous and without connection or relation with each other? Are the provisions of the act such as to operate as a surprise upon legislators or others, or to open the way to frauds and improper influences, such as are supposed to obtain in 'omnibus' or 'job' bills? We think not.   It can hardly be doubted that a bill to establish a new county might properly provide for all necessary courts.   These would be mere incidents germane to the general subject.   The general subject of this bill is not so broad, and we think a proper construction of this act will be to hold that the

general subject is the establishment of such additional courts for Sullivan county as, in the opinion of the legislature the public exigencies demanded, and with the general object the act contains nothing incongruous. . . . . Treating the general subject of the act as the establishment of such additional courts for Sullivan county as the public exigencies demanded, it is manifest that this general subject is expressed in the title, to wit: 'An act to establish a chancery and law court at Bristol, in Sullivan county.' This undoubtedly gives notice of what the act may be expected to contain, and it cannot fairly be said that the title is deceptive or misleading. It is argued that the title indicates but one court, a court having common-law and equity jurisdiction, whereas the act provides for two courts, one of chancery and the other of law jurisdiction. This may be the strictly grammatical construction of the language of the title; but the point, though ingeniously pressed, is too fine for practical application.

"The generality of the title is no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection. *Cannon* v. *Mathes,* 8 Heisk., 519."

Another case in which it was claimed the title was restrictive, and objection made both to the title and the body of the act, is the case of *State* v. *Brown,* 103 Tenn., 454, 53 S. W., 727. Chapter 129, p. 273, Acts of 1893, is entitled:

"An act to amend section 5365 of the Milliken & Vertrees' Compilation of the Laws of Tennessee, being section 4614 of the Code, as amended by chapter 56, Acts of 1871, so as to raise the age of consent, as set forth in said section to twelve years, and to prescribe punishment in the penitentiary against persons having carnal knowledge of females over twelve years and under sixteen years and one day of age."

The body of the act provided that:

"Any person who shall unlawfully and carnally know and abuse a female under the age of twelve, shall, on conviction, be punished as in the case of rape; and any person who shall unlawfully know a female over the age of twelve years and under the age of sixteen years and one day, shall be deemed guilty of a felony in all cases not falling under the statutes relating to rape, and on conviction, shall be confined in the penitentiary for not less than three years, nor more than ten years," etc.

This court, in passing upon the constitutionality of this act, said:

"The insistence is that this provision is doubly violated, in that both the title and body of this act embrace two subjects. The title or caption does express the purpose to raise the age of consent from ten to twelve years, and also the purpose to prescribe the punishment for the carnal knowledge of females over twelve years and under sixteen years and one day of age, and these two purposes are more fully expressed and put in force by the more elaborate language of section 1 of this act.

Yet this does not establish the proposition that the caption and body of the act express and treat respectively two subjects. In reality the subject is single, and the two purposes indicated relate to different parts of that one subject, which is the prevention and punishment of carnal connection with young females."

It will be observed that in all of these cases the inquiry of the court was to ascertain from the title the general subject of the act, and it was held that matters which might fairly relate to that subject might properly be embraced in the body of the act.

The title of chapter 361, p. 1203, of the Acts of 1907, is as follows:

"An act to authorize municipalities of Tennessee having a population of the census of 1900, or any subsequent federal census, of not less than thirty thousand nor more than forty thousand, to issue one hundred and sixty-five thousand dollars of coupon bonds with which to fund the floating debts of said cities, to increase and improve the fire departments, to widen streets, and pay damages to property holders caused by the erection of viaducts and bridges; also to authorize said cities to issue fifteen thousand dollars of coupon bonds with which to build sewers."

It will be observed, from an examination of the body of the act already quoted, that the purposes disclosed in the title are fully embraced in the enactment. What, then, is the general subject embraced in the title of this

act? It requires neither a narrow nor a latitudinarian construction to hold that the issuance of bonds for municipal purposes is the subject of the caption. An issue of $165,000 of coupon bonds is authorized for certain municipal purposes therein designated, while another issue of $15,000 is allowed for another municipal purpose. Funding floating municipal debts, increasing and improving the fire department, widening streets, and the payment of damages to property holders caused by the erection of viaducts and bridges, and also the building of sewers, are all undeniably municipal purposes. If this act, instead of dividing the amount of the bond issue, had authorized the issuance of $180,000 of coupon bonds, enumerating the purposes for which they might be used, the present verbal criticism would be eliminated. The fact that the amount of the bond issue is divided, $165,000 of coupon bonds to be used for the purposes enumerated in the title and $15,000 for the other purpose designated, would not convert the general subject of the act, to wit, the issuance of bonds for municipal purposes, into two subjects, for the reason that all the purposes expressed in the act are cognate and germane to that one general subject.

It is conceded by counsel for the defendant that, if the title had conferred on the municipalities embraced in the act the general power to issue bonds for municipal purposes, it would have been competent to include in the body of said act bonds to fund floating debts and bonds to build sewers. We do not think the case

Knoxville v. Gass.

supposed stronger than the actual title of the act here-
in, wherein the bond issue is divided into two classes
apportioned for designated municipal purposes. Wheth-
er the title to the present act be considered from the
viewpoint of a general or restrictive title, the subjects
embraced in the title and in the body of the act are all
municipal purposes, and in that way related to each
other. In our opinion the act in question is a constitu-
tional enactment, and the result is the judgment will be
affirmed.