## 18855

O. Gerald MIMS and E. Roy Stone, Jr., individually, and representing the taxpayers of the State of South Carolina, Plaintiffs-Appellants, v. Robert E. McNAIR, Grady L. Patterson, Henry Mills, Edgar A. Brown, and Robert James Aycock, constituting the State Budget and Control Board of South Carolina; and Daniel R. McLeod, as Attorney General of the State of South Carolina, Defendants-Respondents, and Lawrence S. Graham, Hughey Long Cockrell, Malcolm C. Amick, and Robert Bedenbaugh, Intervening Petitioners.

(165 S. E. (2d) 355)

66

*Messrs. Clinch Heyward Belser,* of Columbia, *for the Appellant O. Gerald Mims, and Edward P. Riley,* of Greenville, *for the Appellant E. Roy Stone, Jr.,*

68

*Messrs. Daniel R. McLeod, Attorney General* of Columbia, *and Sinkler, Gibbs & Simons* of Charleston, *for Respondents,*

Jan. 7, 1969.

*Per Curiam.*

This action was instituted pursuant to the Uniform Declatory Judgments Act by the plaintiffs individually and representing taxpayers of the State of South Carolina. The

plaintiffs seek to enjoin the issuance of any State Capital Improvement Bonds pursuant to the authorization of legislation enacted at the 1968 session of the General Assembly. Several taxpayers, referred to as Intervening Petitioners, were made parties to the litigation and participated in the trial of the issues at the circuit court level. The Intervening Petitioners have not appealed.

The appeal on behalf of the plaintiffs-appellants is based on nineteen exceptions challenging rulings of the circuit judge. This court, pursuant to our rule, granted the petition of the plaintiffs-appellants for permission to attack previous decisions of this court, to-wit:

*State ex rel. Richards v. Moorer,* 152 S. C. 455, 150 S. E. 269 (1929); *Williamson v. Richards,* 158 S. C. 534, 155 S. E. 890 (1930); *State ex rel. Crawford v. Stevens,* 173 S. C. 149, 175 S. E. 213 (1934); *Crawford v. Johnston,* 177 S. C. 399, 181 S. E. 476 (1935); *State ex rel. Coleman v. Lewis,* 181 S. C. 10, 186 S. E. 625 (1936); *Arthur v. Johnston,* 185 S. C. 324, 194 S. E. 151 (1937); *Crouch v. Benet,* 198 S. C. 185, 17 S. E. (2d) 320 (1941); *State ex rel. Roddey v. Byrnes,* 219 S. C. 485, 66 S. E. (2d) 33 (1951); *Arthur v. Byrnes,* 224 S. C. 51, 77 S. E. (2d) 311 (1953).

After considering the petition and the arguments, both written and oral, in support of the petition, we conclude that an overruling or modification of these cases is not warranted.

We are satisfied that the decree of the Honorable John Grimball correctly sets forth and disposes of all questions raised by the plaintiffs-appellants on this appeal and the order of the circuit court shall be reported herewith as the opinion of this court.

The judgment of the lower court is, accordingly,

Affirmed.

The Order of Judge GRIMBALL follows:

At its 1968 Session the General Assembly enacted legislation bearing Ratification Number R-1518 entitled "An Act

to Provide for the Issuance by the State of South Carolina of State Capital Improvement Bonds; to Prescribe the Conditions Under Which Such Bonds May be Issued; to Make Provision for the Payment Thereof; and to Amend Act No. 487 of 1965 Relating to Student and Faculy Revenue Bonds of South Carolina State College so as to Increase the Amount Which may Be Issued," approved June 24, 1968 (the Bond Act). The Bond Act purports to authorize the issuance of not exceeding Seventy Million Dollars ($70,000,000.00) of State Capital Improvement Bonds for the purposes specified therein; and further provides that these bonds will be secured by the full faith, credit and taxing power of the State of South Carolina. The Bond Act further provides that in addition there shall be pledged to the payment of such bonds all revenues that the State shall from time to time realize from the tax imposed by Chapter 5, Title 65, Code of Laws of South Carolina, 1962, now or hereafter amended (State Income Tax). The principal attack made by the Plaintiffs is based on their contention that the Bond Act violates the provisions of Article X, Section 11 of the South Carolina Constitution which prohibits the creation of any debt by the State unless the question of the creation thereof is first submitted to the qualified electors of the State at a General Election and favorably voted on by at least two-thirds of the qualified electors of the State voting on the question.

The Plaintiffs are residents and taxpayers of the State of South Carolina and bring this action individually and represent all other taxpayers primarily to enjoin the issuance of any State Capital Improvement Bonds and, failing in that, to obtain a judicial construction of certain provisions of the Bond Act relating to the amount of State funds which can be invested therein.

In their Complaint the Plaintiffs allege that although they bring this suit in a representative capacity representing all other persons similarly situate, they nevertheless want to advise the public generally of the institution of this litigation and to provide any other person who is so minded an op-

portunity to intervene herein and raise any other question regarding the constitutionality or implementation of the Bond Act. As a consequence, and on motion of the Plaintiffs this Court issued its Order dated July 25, 1968 for the publication of an appropriate notice advising the public of the institution of this action and of their right to intervene within 20 days after such publication. The Notice was duly published on July 29, 1968 in three newspapers, *viz.,* The Charleston, S. C. News & Courier, the Columbia, S. C. The State, and the Greenville, S. C. The Greenville News. Pursuant to this invitation application was made by the Intervening Petitioners, Lawrence S. Graham, Hughey Long Cockrell, Malcolm C. Amick, and Robert Bedenbaugh, and by Order of this Court dated August 21, 1968 they were authorized to intervene in this action with leave to make such motions, file supplementary pleadings and take such other action as they deem advisable within twenty (20) days thereafter. No other persons have sought to intervene herein and the Intervening Petitioners have filed their Supplemental Complaint alleging the same constitutional objections as set forth in the Plaintiff's Complaint, together with one additional objection.

The Defendants include the members of the State Budget and Control Board of South Carolina, which is a body authorized under the Bond Act to issue State Capital Improvement Bonds, and Daniel R. McLeod, as Attorney General of the State of South Carolina. The Defendants, members of the State Board have filed an Answer generally admitting the factual allegations of the Complaint and alleging more specifically the amount of bonds which they propose to issue and the purposes for which they will be issued. Attached to the Answer are several Exhibits, including a schedule showing the receipts actually received from the State Income Tax each year, beginning with the year 1959 and an estimate of receipts to be received from the State Income Tax each year hereafter through the year 1989. The Defendants have also answered the Supplemental Complaint of the Interven-

ing Petitioners and that Answer is substantially in the same form as the Answer to the original Complaint.

This matter now comes before me on motion of the Intervening Petitioners for an Order to strike certain allegations of the Complaint with the result that the Intervening Petitioners will replace the original Plaintiffs as the Plaintiffs in this action representing the taxpayers of the State of South Carolina, and for an Order of Reference, and further, upon motion of the Defendants for a Judgment on the pleadings sustaining the constitutionality of the Bond Act and confirming the right of the Defendants to issue State Capital Improvement Bonds in accordance with the provisions, and subject to the limitations of the Bond Act upon the ground that the pleadings herein disclose all the facts necessary to entitle the Defendants to Judgment and present no material issue of fact,. These matters were fully argued before me in the Richland County Courtroom on Saturday, October 5, 1968, at which time counsel for all parties appeared and were heard.

The Intervening Petitioners advance no grounds for their motions to replace the original Plaintiffs as representing the taxpayers of South Carolina and for a reference and none appears to the Court. In any event, the Intervening Petitioners are now parties to this action, and they are now in a position to raise all issues which they think should be raised for the protection of themselves and the other taxpayers of the State of South Carolina. An examination of their Supplemental Complaint shows that the Intervening Petitioners have adopted the many constitutional objections urged by the Plaintiffs, and have added one additional objection. However, the Intervening Petitioners raise no issue regarding the investment of State funds in State Capital Improvement Bonds as has been raised by the Plaintiffs.

With regard to the Defendants' Motion for a judgment on the pleadings, it is apparently conceded by all parties that there are no material issues of fact and this is a proper case for disposition by the Court on the pleadings. At the hear-

ing there was no opposition made to the Court's undertaking to dispose of the matter in this fashion.

The Special Fund Doctrine was first enunciated in the case of *State ex rel. Richards v. Moorer,* 152 S. C. 152 S. C. 455, 150 S. E. 269. This Doctrine, adhered to in numerous subsequent decisions, was restated in the case of *Arthur v. Byrnes,* 224 S. C. 51, 77 S. E. (2d) 311, as follows:

"It is now well settled that the General Assembly may authorize the issuance of general obligations of the State without submitting the question as to the creation of such debt to the qualified electors as required by Section 11, Article 10, where such obligations are secured by the pledge of a fund established or set aside which is reasonably sufficient to pay such obligations without resorting to the levy of a property tax. * * *"

If the bonds authorized by the Bond Act qualify under the Specal Fund Doctrine the provisions of Article X, Section 11 requiring a vote have no application. This Doctrine is well established by the decisions of the South Carolina Supreme Court over a period of almost 40 years, by which I am bound. If, however, the bonds do not come within the Special Fund Doctrine the Bond Act would violate Article X, Section 11. The original Plaintiffs and Intervening Petitioners urge that the Special Fund Doctrine has no application for several reasons which I will discuss in the order in which they are presented in the pleadings.

The Plaintiffs and Intervening Petitioners contend that there is no "Special Fund" created or set aside for the payment of the bonds and that the provisions of the Bond Act providing for a pledge of the State Income Tax is not sufficient to create the fund required by the Special Fund Doctrine. However, the language of the Bond Act is clear to the effect that the revenues derived from the State Income Tax are pledged and set aside for the purpose of paying off the bonds. Under the provisions of the Bond Act

the State Treasurer would be required to implement the pledge and make provision for the payment of the principal and interest on all State Capital Improvement Bonds. In particular, see Section 5 of the Bond Act.

It is contended that the Bond Act permits the issuance of additional bonds pursuant to legislative authorization hereafter enacted, payable from the revenues derived from State Income Tax. However, this is no objection. The original Highway Bond Act sustained in *State ex rel. Richards v. Moorer, supra,* provided for $65,-000,000 of State Highway Bonds and that amount has subsequently been raised by the General Assembly to $70,-000,000. Likewise the State School Bond Act, sustained in the case of *State ex Rel. Roddey v. Byrnes,* 219 S. C. 485, 66 S. E. (2d) 33, originally provided for the issuance of not exceeding $75,000,000 of School Bonds and that authorization has subsequently been raised to $137,000,000. The important point is that before the issuance of any State Capital Improvement Bonds it must fist be determined that the amount of revenues derived from the State Income Tax during the preceding fiscal year exceeded 150% of the maximan annual principal and interest requirements of all bonds, outstanding and thereafter to be outstanding, to which the State Income Tax is pledged, and further, that the estimated future collections of the State Income Tax will produce not less than 150% of the maximum annual debt service requirements of all such bonds. Thus, regardless of the amount of bonds hereafter authorized and secured by a pledge of the State Income Tax, those tests to establish the sufficiency of the State Income Tax must first be met before any bonds may be issued pursuant to the Bond Act, including acts amendatory thereof.

The Plaintiffs and Intervening Petitioners contend that the 150% coverages above mentioned and prescribed by the Bond Act are inadequate. However, the decision of the South Carolina Supreme Court in the case of *Arthur v. Byrnes, supra,* supports the proposition

that a 150% coverage does provide an adequate fund. Furthermore, in the case of *State ex rel. Roddey v. Byrnes, supra,* the South Carolina Supreme Court upheld the legislation providing for the issuance of State School Bonds, payable from the proceeds of the Retail Sales Tax, including a provision whereby the Sales Tax can be revised, provided that no such revision shall reduce the receipts of the Sales Tax, as estimated by the State Auditor, to less than 150% of that sum which is equal to the maximum annual principal and interest requirements on all State School Bonds outstanding and requested to be issued.

They also contend that under the language of the Bond Act, in computing the 150% coverage, no bonds or other obligations to which State Income Tax has been pledged need be taken into account, except State Ports Bonds and State Capital Improvement Bonds. A strict and literal construction of the Bond Act might lead to that conclusion. However, the fact is that there are no other obligations at the present time for the payment of which the State Income Tax is pledged or for the payment of which the State Income Tax is proposed to be pledged. The Bond Act is apparently intended as a permanent vehicle by which State Capital Improvement Bonds can hereafter be issued from time to time. In the event some subsequent legislature should pledge the State Income Tax to some other obligation, then, upon the subsequent issuance of State Capital Improvement Bonds the pledge made for such other obligations would have to be taken into account in order to determine the sufficiency of the State Income Tax at that time for the payment of the State Capital Improvement Bonds then to be issued. The pledge made to such other obligation, of course, would be subordinate to the pledge prescribed by the Bond Act for the payment of any outstanding State Capital Improvement Bonds.

The State Income Tax has heretofore been pledged to the payment of the outstanding $13,750,000.00 State Ports Bonds, upon which the annual debt service is less than $1.7

Million. Exhibit "B" attached to the Defendants' Answer and Answer to the Supplemental Complaint is a table showing the estimated receipts from the State Income Tax, together with the annual debt requirements on the State Ports Bonds and the estimated balance of the State Income Tax remaining after payment of the State Ports Bonds. Consequently, the fund pledged by the Bond Act is subject to a prior pledge and the Plaintiffs and Intervening Petitioners contend that for this reason the pledge prescribed by the Bond Act does not qualify for the Special Fund Doctrine.

However, in none of the decisions relating to the Special Fund Doctrine called to my attention has the priority of the pledge been deemed to be material. The sole question has been the sufficiency of the fund provided in order to pay off the principal and interest on the bonds to which they have been pledged, without resort being made to *ad valorem* property taxes. Here, the revenues to be derived from the estimated receipts from the State Income Tax, after payment of the outstanding State Ports Bonds, are more than adequate to provide a reasonably sufficient fund for the payment of the State Capital Improvement Bonds authorized by the Bond Act. The annual debt service requirements on the State Ports Bonds can be determined to the cent, and as a consequence, the fund which has been pledged is the revenue derived from State Income Tax less that amount payable in each year on State Ports Bonds. In the original Special Fund decision, *State ex rel. Richards v. Moorer, supra,* the general obligation bonds authorized were also secured by a pledge of certain revenues derived from the gasoline tax and automobile license fees. However, these funds were first pledged for the costs of operating the Highway Department up to $450,000.00, and then to make payments on Reimbursement Agreements, and thereafter the balance remaining was pledged to payment on the bonds authorized to be issued. Thus, in the original Special Fund decision the pledge was, in fact, a subordinate pledge. As long as the fund pledged is reasonably sufficient to provide

payment of the bonds it would seem to be immaterial that there is a prior pledge which does not affect the sufficiency of the fund. Moreover, in any event once the sufficiency of the fund is established, the full faith, credit and taxing power of the State is pledged to the payment of the bonds.

The Plaintiffs and Intervening Petitioners contend that the State Income Tax is subject to fluctuations and therefore cannot be held to constitute a reasonably sufficient fund. Obviously, the revenues derived from the State Income Tax will fluctuate with business conditions (cf. *Cox v. Bates,* 237 S. C. 198, 116 S. E. (2d) 828), but this is no more true in the case of the State Income Tax than in the case of the State Retail Sales Tax, which was sustained in *State ex rel. Roddey v. Byrnes, supra,* as an adequate fund for the payment of State School Bonds, nor in the case of State Institution fees, a pledge of which was sustained in the case of *Arthur v. Byrnes, supra.* The fact remains that on the occasion of the issuance of the bonds it must be established that the fund pledged is reasonably sufficient, based on the best estimates then available, to meet the payment of principal and interest as they come due, and that the fund meets the coverage tests prescribed by the Bond Act.

For the foregoing reasons, I have concluded that the Special Fund Doctrine does apply in the case of the bonds authorized by the Bond Act and that none of the contentions to the contrary made by the Plaintiffs and the Intervening Petitioners have any merit. Therefore, the provisions of Article X, Section 11 of the State Constitution have no application.

The plaintiffs and the Intervening Petitioners make several other attacks upon the constitutionality of the Act. They contend that the title is defective because it makes no specific mention of State Income Taxes nor any pledge thereof, nor does it mention general obligation bonds. Consequently, they argue that the Act violates Article III, Section 17 of the State Constitution which provides that

every act shall relate to but one subject and that shall be expressed in the title. A title does not have to be an index of the contents of an act as long as the general subject is set forth and the title here meets the requirements of Article III, Section 17. *Arthur v. Johnston,* 185 S. C. 324, 194 S. E. 151; *Crawford v. Johnston,* 177 S. C. 399, 181 S. E. 476; *Crouch v. Benet,* 198 S. C. 185, 17 S. E. (2d) 320.

The Plaintiffs and the Intervening Petitioners con- ■ tend that the pledge of the State Income Tax is an unreasonable discrimination against the persons who pay the State Income Tax and that this class of taxpayers should not be charged, in effect, with the payment of State Capital Improvement Bonds. There is no merit in this contention. In the case of *Crawford v. Johnston, supra,* it was contended that a pledge of the electric power tax could not be validly made for the payment of State Institution Bonds, a purpose with which the source of revenue had no connection. The Court struck down this objection quoting with approval "* * * 'At any rate there is nothing in the state or federal Constitution which requires a state to apply such fees to the benefit of those who pay them * * *' * * * The General Assembly may appropriate funds from the state treasury to whatever purposes it thinks proper so long as its acts are not in conflict with the Constitution."

The Bond Act authorizes the issuance of bonds for ■ certain specified improvements at South Carolina State College. Section 22 of the Bond Act provides that the funds therein authorized or hereafter authorized pursuant to the Bond Act for use of higher educational institutions shall be used in the best interest of and to further the educational purposes of the institutions as solely determined by the governing body of such institutions. It is contended that Section 22 of the Bond Act is an unconstitutional delegation of power by the General Assembly inasmuch as it would empower the governing bodies of State Institutions to determine how bond proceeds should be spent at their respective institutions. There is no unconstitu-

tional delegation of power. The situation here is parallel to the situation before the Court in the case of *Stackhouse v. Floyd,* 248 S. C. 183, 149 S. E. (2d) 437. In that case the statute under attack authorized the Dillon County Board of Education to issue bonds for the use of the three school districts in Dillon County in proportion to their respective pupil enrollments. The statute further provided that such funds as were apportioned among the three school districts should be applied by the respective Boards of Trustees of the three school districts to provide additional public school facilities therein. Although the question raised here was not raised in the *Stackhouse* case, the Supreme Court held there, and I think it applicable here, that the General Assembly "can validly authorize the expenditure of the bond proceeds by the Trustees of the respective school districts in the manner and for the purposes prescribed by the General Assembly. In each instance, County Boards of Education and the respective Boards of Trustees act as agents of the General Assembly within well defined limits." See also *Cox v. Bates, supra,* and *Parker v. Bates,* 216 S. C. 52, 56 S. E. (2d) 723.

The Bond Act provides in Section 3(g) that State Capital Improvement Bonds may be issued for such other purposes as the General Assembly may from time to time specify by subsequent legislation. The Plaintiffs contend that this provision violates Article III, Section 17 of the South Carolina Constitution in that the purpose of such additional bonds is not expressed in the title of the Bond Act, and further that it violates the provisions of Article X, Section 3 of the South Carolina Constitution, which provides that no tax shall be levied except in pursuance of a law which shall distinctly state the object of the same, to which object the tax shall be applied. The title is sufficient on the basis of the authorities on that point hereinabove set forth. Furthermore, there is no merit in the contention that the Bond Act violates Article X, Section 3. The Bond Act merely directs that certain revenues or taxes

levied and collected under existing laws should be used in the payment of the bonds. *Crawford v. Johnston, supra.* Finally, the provisions of Section 3(g) do not constitute prospective legislation, such as was sustained in *Moffett v. Traxler,* 247 S. C. 298, 147 S. E. (2d) 255; rather they express the legislative intent that State Capital Improvement Bonds may be issued, if properly authorized by subsequent legislation, for other public purposes than those specified in the Bond Act.

One of the purposes for which State Capital Improvement Bonds are authorized to be issued by the Bond Act is for the acquisition of land and construction of facilities relating to the Official Tri-Centennial Celebration of the founding of South Carolina. The Plaintiffs and Intervening Petitioners contend that this is not a proper public purpose for which State funds can be utilized.

The Tri-Centennial Commission was created by Act No. 1141 of 1966 "to plan an overall program for the celebration of the 300th Anniversary of the founding of the State of South Carolina". The proposed published plans include the development of Old Town in Charleston County, the place where the first settlement was made, and the acquisition and construction of public facilities in Richland and Greenville Counties to commemorate the 300th Anniversary. These sites will thereafter be used as public parks or historical attractions for the people of South Carolina. There are no restrictions imposed by the Constitution upon the purposes for which the Legislature may levy taxes and expend public funds, except that it be a public purpose. *Gaud v. Walker,* 214 S. C. 451, 53 S. E. (2d) 316. The funds to be allocated to the Tri-Centennial Celebration from the bond proceeds are to be used for historical and recreational purposes, both of which are recognized to be public purposes. *Powell v. Thomas,* 214 S. C. 376, 52 S. E. (2d) 782; *Marshall v. Rose,* 213 S. C. 428, 49 S. E. (2d) 720.

It is further contended that the Bond Act violates the constitutional requirement for the separation of the legislative and executive functions as prescribed by Article I, Section 14, in that the two members of the State Board, which is the body authorized by the Bond Act to issue the bonds, are also members of the General Assembly, to wit: the Chairman of the Senate Finance Committee and the Chairman of the House Ways and Means Committee. There is no merit in this contention. *Elliott v. McNair*, 250 S. C. 75, 156 S. E. (2d) 421.

Finally, the Intervening Petitioners contend that the Bond Act violates Article X, Section 7 of the State Constitution which relates to the issuance of scrip. This same objection was raised in the case of *State ex rel. Roddey v. Byrnes, supra,* and the Supreme Court held that Article X, Section 7 is inapplicable to bonded debt of the State.

For the foregoing reasons I find no merit in any of the objections raised as to the validity of the Bond Act. The Plaintiffs further seek an Order prohibiting the investment of State funds in any State Capital Improvement Bonds maturing more than two years subsequent to the date of investment, and limiting the aggregate amount of all such investments, including investments heretofore made in the special obligations of the State referred to in Section 1(3) of the Bond Act, to the aggregate principal amount of $15,000,000.00 at any one time outstanding. This position results from the Plaintiffs' reading of the proviso appearing at the end of the Section of the Bond Act authorizing the State Board, as Trustee and Manager of various State funds, to invest moneys in their hands in State Capital Improvement Bonds. The proviso reads as follows:

"Provided, however, state funds in any such investments shall be limited to a sum not exceeding fifteen million dollars and for a period not exceeding two years."

It seems clear to me that the purpose of the proviso is to limit the extent of time during which the State can hold any

given investment. It is well known that State obligations generally mature over a period of up to 20 years. To limit the investment of State funds to State Capital Improvement Bonds maturing within 2 years of the date of investment would be an unnecessarily restrictive interpretation of the proviso. The intent of the proviso can be given full effect by restricting the investment of State funds in any State Capital Improvement Bonds to not exceeding 2 years. This means that the State Board, if it invested funds under its control in State Capital Improvement Bonds, regardless of their maturity would have to divest itself of those bonds by a public offering or otherwise within 2 years from the date of investment. Finally, I do not agree with the contention that in the calculation of the $15,000,000.00 limit, account should be taken of investments made in the special obligations of the State referred to in Section 1(3) of the Bond Act. The proviso expressly relates to State funds "in any such investments" and the term "investments" when taken in its context as a part of Section 16 obviously refers to investments in State Capital Improvement Bonds and does not include the investment of State funds in any other obligation.

For the foregoing reasons I have concluded that the defendants are entitled to their Motion for a Judgment on the pleadings. It is, therefore

Ordered, adjudged and decreed that the Motions of the Intervening Petitioners to strike certain allegations of the Complaint and for a Reference be, and the same hereby are, denied; and

It is further ordered, adjudged and decreed that the Motion of the Defendants for a Judgment on the pleadings be and the same is hereby granted, the constitutionality and validity of the Bond Act is hereby sustained against all objections, and the Defendants may lawfully proceed to issue in accordance with the provisions of the Bond Act State Capital Improvement Bonds within the limitation thereof, and to invest State funds in State Capital Improvement Bonds to the extent hereinabove set forth.