Hubert J. GELLERT, Appellant,

v.

The STATE of Alaska et al., Appellees.

The STATE of Alaska et al.,
Cross-Appellants,

v.

Hubert J. GELLERT, Cross-Appellee.

Nos. 2006 and 2018.

Supreme Court of Alaska.

June 3, 1974.

Eric E. Wohlforth, McGrath, Wohlforth & Flint, Anchorage, for Hubert J. Gellert.

C. Richard Walker, Orrick, Herrington, Rowley & Sutcliffe, San Francisco, Cal., John A. Reeder, Jr., Asst. Atty. Gen., Anchorage, and John E. Havelock, Atty. Gen., Juneau, for State of Alaska, and others, appellees in No. 2006, cross-appellants in No. 2018.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

## OPINION

CONNOR, Justice.

This appeal involves interpretation of the "one-subject rule" set forth in Article II, Section 13, of the Alaska Constitution.

In 1972 the Alaska Legislature enacted a bill entitled:

"An Act Providing for the Issuance of general obligation bonds in the amount of $20,000,000 for the purpose of paying the cost of capital improvements for flood control and small boat harbor projects; and providing for an effective date."

The body of the act read in part:

"For the purpose of paying the cost of state participation in capital improve-

ments for flood control projects as provided in AS 35.07 and for small boat harbor projects, general obligation bonds of the state in the principal amount of not more than $20,000,000 shall be issued and sold."

The bill created a "1972 Flood Control and Small Boat Harbor Projects Fund," to which the proceeds of the bonds were to be credited. The uses of the proceeds were to be determined by the governor, and were to be apportioned with $10,000,000 going to flood control projects and $10,000,000 going to specified small boat harbor projects in stated, estimated amounts.

This bill, Chapter 201, SLA 1972, was approved by the Governor, and became effective on July 8, 1972. To finance the capital improvements provided in Chapter 201, Bond Proposition No. 7 was proposed. This bond proposition was ratified by a majority of the qualified voters of the state who voted on the question in the November 7, 1972, general election.[1] The principal question presented by this appeal is whether the state may proceed to issue bonds pursuant to Chapter 201 or whether the state is forbidden to incur the indebtedness because of Art. II, Sec. 13, of the Alaska Constitution, which provides:

"Every bill shall be confined to one subject unless it is an appropriation bill or one codifying, revising, or rearranging existing laws. Bills for appropriations shall be confined to appropriations. The subject of each bill shall be expressed in the title. The enacting clause shall be: 'Be it enacted by the Legislature of the State of Alaska.'"

Mr. Hubert Gellert filed a complaint in February, 1973, alleging that issuance of the bonds would be illegal in that the authorizing statute, Chapter 201, violated the

one-subject rule by combining two separate subjects, flood control and small boat harbor projects. The complaint further alleged that both Chapter 201 and Bond Proposition No. 7 were enacted contrary to Art. IX, Sec. 8, of the Constitution in that both provided for the submission of "two questions to the voters of the State instead of the single question required by Article IX, Section 8. . . ."[2]

A trial was held by the superior court. The Director of the Division of Waters and Harbors of the Alaska Department of Public Works, Mr. Donald Statter, testified concerning the small boat harbor projects authorized by Chapter 201 and federal involvement in payment for portions of these projects. He also gave his views on the reason the legislature combined the projects in one bill. The Mayor of the Fairbanks North Star Borough, John A. Carlson, testified as to the scope and character of the Fairbanks Flood Control Project, including its recreational attributes and proposed ancillary road improvements. Mr. Donald Wilbur of the United States Corps of Engineers testified with respect to that agency's Alaska water resources program concerning improvements in navigation, flood control, and small boat harbors. Thus the court had the benefit of a record which elucidated the nature of the projects and their relationship to the public works programs of the federal and state governments.

On May 22, 1973, the court adopted findings of fact including the following:

"10. Flood control and small boat harbor projects are separate distinct activities totally unrelated.

11. The bond proposition previously outlined and the statute pursuant to which it was presented to the voters deal

1. The vote was 51,995 in favor, 39,708 opposed.

2. Alaska Constitution, Article IX, Section 8, states:
"No state debt shall be contracted unless authorized by law for capital improvements and ratified by a majority of the qualified voters of the State who vote on the question. The State may, as provided by law and without ratification, contract debt for the purpose of repelling invasion, suppressing insurrection, defending the State in war, meeting natural disasters, or redeeming indebtedness outstanding at the time this constitution becomes effective."

with a single subject, to-wit: the sale by the State of bonds, the proceeds from which are to be used for 'capital improvements.' "

In its conclusions of law the court held that the issuance of the bonds and the levy, assessment and collection of taxes to pay principal and interest on said bonds were lawful, constitutional and valid. The court further held that Chapter 201 and Bond Proposition No. 7 were not in violation of Art. II, Sec. 13, and Art. IX, Sec. 8, of the Alaska Constitution.

Appellant states that the issues which must be determined on appeal are: (1) whether the court erred in holding that Chapter 201 and Bond Proposition No. 7 deal with a single subject, to-wit: the sale of state bonds, the proceeds from which are to be used for "capital improvements"; (2) whether the court erred in finding that Art. II, Sec. 13, and Art. IX, Sec. 8, of the Alaska Constitution were complied with even though the capital improvements to be constructed with the proceeds of the bonds are "separate distinct activities totally unrelated"; and (3) whether the subject of a bill authorizing bonds is the actual individual capital improvements to be financed with the proceeds of the bonds rather than the issuance of bonds itself.

Upon analysis, it appears to us that the specifications of error are but variant statements of the single contention that the act is not confined to one subject.

The state cross-appeals, contending that the superior court erred in making its finding of fact No. 10, *supra,* in that such finding of fact is erroneous and is not relevant because it is not necessary to support the findings of fact and conclusions of law made thereafter.

It is generally agreed that the primary aim of "one-subject" provisions in state constitutions is the restraint of log-rolling in the legislative process. Minnesota v. Cassidy, 22 Minn. 312, 322 (1875); M. Ruud, "No Law Shall Embrace More Than One Subject," 42 Minn.L.Rev. 389, 391 (1958). Log-rolling consists of deliberately inserting in one bill several dissimilar or incongruous subjects in order to secure the necessary support for passage of the measure. The constitutional provision should however, be construed with considerable breadth. Otherwise statutes might be restricted unduly in scope and permissible subject matter, thereby multiplying and complicating the number of necessary enactment and their interrelationships. As we observed in Suber v. Alaska State Bond Committee, 414 P.2d 546 (Alaska 1966), the purpose of the constitutional provision is,

" . . . to prevent the inclusion of incongruous and unrelated matters in the same bill in order to get support for it which the several subjects might not separately command, and to guard against inadvertence, stealth and fraud in legislation. In construing such a provision, the court will disregard mere verbal inaccuracies, resolve doubts in favor of validity, and hold that in order to warrant the setting aside of enactments for failure to comply, the violation must be substantial and plain." 414 P.2d at 557.

Appellant argues that flood control and boat harbor projects are so inherently distinct that they cannot be brought rationally within the notion of "one-subject". The parties to this appeal recognize that cases in other jurisdictions have both sustained and invalidated certain acts which included several public works projects within a single enactment.[3] We agree with appellee

---

3. Appellant cites Johnson v. Greiner, 44 N.M. 230, 101 P.2d 183 (1940); Herrin v. Erickson, 90 Mont. 259, 2 P.2d 296 (1931), and Washington Toll Bridge Authority v. State, 49 Wash.2d 520, 304 P.2d 676 (1956), among others. Appellee cites Keeting v. Public Utility District No. 1, 49 Wash.2d 761, 306 P.2d 762 (1957); Industrial Development Board of County of Sevier v. First United States Corp., 219 Tenn. 156, 407 S.W.2d 457 (1966); Mims v. McNair, 252 S.C. 64, 165 S.E.2d 355 (1969); Camp v. Metropolitan Atlanta Rapid Transit Authority, 229 Ga. 35, 189 S.E.2d 56 (1972), and Metropolitan Water District of Southern California v. Marquardt, 59 Cal.2d 159, 28 Cal.Rptr. 724, 379 P.2d 28 (1963), among others.

that cases bringing into question the "one-subject" rule can be analyzed for the most part only in terms of the particular facts of each case. For this reason, cases from other jurisdictions in many instances are of only slight value in resolving the question before us.

■ Ultimately the decision in cases of this kind must be made on a basis of practicality and reasonableness. In determining whether a bill is confined to one subject, we agree with the statement:

> "All that is necessary is that act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject." Johnson v. Harrison, 47 Minn. 575, 50 N.W. 923, 924 (1891).

With these principles in mind, we find the facts in this case enlightening.

The boat harbor and flood control projects comprehended within Ch. 201 are all part of a cooperative water resources development program sponsored by both the state and federal governments. At the trial of this case, the evidence revealed that all of the projects covered by Ch. 201 are administered by the United States Army Corps of Engineers in cooperation with other state and federal agencies. Under various federal enactments, the Corps engages in studies of projects which have been requested by local interests or, as in

the case of alaska, by the state government. After a number of administrative steps have been followed, and Congressional authorization and appropriation of funding has been obtained, the projects become part of the Corps' final, definitive program for the State of Alaska. We view these various Corps-administered projects as part of a continuing program of federal-state cooperation in water resources development, including but not limited to improvement of navigation, flood control, recreation and watershed protection. Federal funding is administered through the Corps for both river and harbor projects and flood control. The State of Alaska is authorized by pre-existing law to enter into such projects.[4] It becomes evident from a perusal of the record that the purpose of Ch. 201 was to provide the state's share of the financing for such projects.

■ We need not adopt appellee's argument that Ch. 201 should be sustained because its subject was the issuance of bonds for capital improvements. For we perceive an underlying purpose by which the inclusion of boat harbors and flood control projects in one bill can be justified. Both these topics pertain to one ongoing plan for the development of water resources and to the method of funding that plan. In our view it is permissible, from considerations of both convenience and logic, to classify these matters as being within the confines of one subject for the purpose of legislation. Because we find that Ch. 201 is confined to one subject, we hold that it is constitutionally valid.[5]

---

4. AS 35.07.010 and AS 35.10.090–35.10.120.

5. In view of this determination, we need not decide the question of whether we should adopt what appellant characterizes as the "minority rule", whereby the subject of bond authorization acts is considered to be the issuance of bonds and not the public works to which the proceeds are to be applied.

Similarly, we decline to reach the issue posed by appellant's argument that Ch. 201 was defective under Article IX, Section 8, of the Alaska Constitution. That section provides:

"No state debt shall be contracted unless authorized by law for capital improvements

and ratified by a majority of the qualified voters of the State who vote on the question."

Appellant argues that if merely the issuance of bonds for capital improvements is the subject of Ch. 201, then those improvements must be specified in the bond proposition with particularity. In view of our holding that the public works included within Ch. 201 are comprised under one subject, and that the subject of Ch. 201 is not merely the issuance of bonds for capital improvements, it is not necessary to treat this question.

Appellee has cross-appealed, contending that the superior court's finding of fact No. 10 was erroneous and, in any event, not necessary to the court's decision. This is the finding which states: "Flood control and small boat harbor projects are separate distinct activities totally unrelated." In view of our holding in this opinion, we agree with appellee that the finding is clearly erroneous.

Affirmed.

FITZGERALD, Justice (dissenting).

The majority conclude they need not accept the state's argument that Chapter 201, SLA 1972, should be sustained because its subject was simply the issuance of bonds for capital improvements. Indeed, in some jurisdictions the position taken by the state here has been upheld,[1] and it was the position taken by the trial court in this case. But the generally accepted view seems to be that it is the projects to be financed which form the subject matter of the proposition.[2] This seems to me to be the better rule for otherwise the Alaska constitutional limitation restricting legislative enactments to one subject would be rendered inoperative with regard to bond propositions.

In the findings of fact the trial court found that "flood control and small boat harbor projects are separate distinct activities totally unrelated." The majority declare this finding clearly erroneous because both flood control and small boat harbors pertain to one ongoing plan for the development of water resources.

I cannot agree that a flood control project at Fairbanks, Alaska, has the same subject matter as small boat harbors for a number of the coastal towns and villages in this state. While it is true that all of the projects included in the proposition involve water, so do hydroelectric dams, bridges, ferries, sewer systems, docks and many other things.

It is admittedly difficult to determine whether a group of projects has one subject matter but difficulty of enforcement does not discharge the duty of this court to ensure that constitutional limitations are observed. And although the judgment of the legislature is entitled to great weight on the issue, it is finally for this court to make the determination. As is accurately noted by the majority, the purpose of the one-subject requirement is to prevent logrolling, i. e., the assembling of a number of pet projects into one bill to consolidate the support for each to achieve a sufficient total. The proposition in question is a good example of what the constitutional provision sought to avoid. It is designed to gather voter support for a project in the interior of Alaska by linking it with harbor projects dear to the coastal towns and villages. This is justified, according to the majority, because federal funding is available and the projects are part of a Corps of Engineers program for the state of Alaska. I do not agree with the logic of the majority that such considerations justify the interpretation which is now to be applied, since for all practical purposes it renders the constitutional provision meaningless. I must dissent.

1. E. g., Walton v. Carter, 337 S.W.2d 674 (Ky. 1960); Panitz v. Comptroller of the Treasury, 247 Md. 501, 232 A.2d 891, 897–899 (Md. 1967); Mayor and Aldermen of Knoxville v. Gass, 119 Tenn. 438, 104 S.W. 1084 (1907).

2. See Annot., 4 A.L.R.2d 617 (1949).